THE STATE, EX REL. WILBUR F. ROSE, TREASURER OF THE COMMISSIONERS OF PUBLIC INSTRUCTION OF THE CITY OF CAMDEN, v. SAMUEL HUFTY, CITY COMPTROLLER OF THE CITY. OF CAMDEN.

Submitted December 5, 1898—Decided February 27, 1899.

1. The powers and duties of the board of education of the city of Camden under its act of incorporation (*Pamph. L.* 1854, *p.* 88) and amendment (*Id.* 1874, *p.* 246) and those of its officers were not abrogated or diminished by the general act of March 10th, 1892, changing the method of selection of the commissioners of public instruction now forming such board and granting additional powers. *Gen. Stat., p.* 3096. The office of treasurer of such board still exists, with the powers and duties prescribed by law.

2. Money derived in the city of Camden from a sale of bonds under the act of February 14th, 1898 (*Pamph. L., p.* 26), for erecting public school buildings, is to be disbursed by the board of education of that city through its treasurer. Upon a proper request, showing necessity for the use of any part of such money, it is the duty of the city council to order a warrant on the city treasurer to pay the same to the treasurer of the board of education, and the duty of the city comptroller to sign such warrant.

On *mandamus.*

Before Justices LUDLOW and COLLINS.

For the relator, *Edward G. C. Bleakly.*

For the respondent, *Henry M. Snyder, Jr.*

The opinion of the court was delivered by

COLLINS, J. The relator prays a *mandamus* to compel the city comptroller to countersign a warrant drawn on the city

treasurer by the board of education of the city of Camden in favor of the relator, as its treasurer, for the sum of $1,000, out of a fund of about $80,000 arising from the sale of bonds issued for the purpose of erecting a manual training and high school in that city. The respondent denies the right of the board of education to have a treasurer, and insists that the true course to be pursued in erecting the building is for that board to draw warrants on the city treasurer in favor of the persons to whom money may be due.

The statute under which the fund involved was raised is "An act to authorize cities to issue bonds for the construction and furnishing of public schools and the acquirement of lands therefor," approved February 24th, 1898. *Pamph. L.,* *p.* 26. The bonds authorized are to be issued and sold by the common council or other board having charge and control of the finances of the city, and payment of interest and principal is to be provided for by taxation. In Camden the city council has control of the finances of the city. *Pamph. L.* 1871, *p.* 225. The third section of the act of 1898 provides as follows:

" 3. The buildings to be erected pursuant to this act shall be erected and furnished by the body in any such city having charge of and control of the public schools, and the money arising from the sale of said bonds shall be placed to the credit of said last-named body, to be expended for the purposes aforesaid."

Evidently the mode of disbursing money raised under this statute will depend upon local conditions. Of course, the money can be used only for the purpose for which it is raised— in the case in hand, the erection and furnishing of a school building of a specified class; but the controlling feature of the act is that the school board shall direct the disbursement. In the city of Camden the school board is autonomous, existing primarily under "An act to incorporate the board of education in the city of Camden," approved February 9th, 1854. *Pamph. L., p.* 88. The body thereby organized had power to fix the school tax, which, when collected, must be paid to its

treasurer, and has power to purchase lands and erect school buildings. The power to have a treasurer is by this act only inferential, but by an amendatory act approved March 5th, 1874 (*Pamph. L., p.* 246), the board is expressly authorized to appoint a treasurer, who holds office for a year. He is to give such security for the faithful performance of his duties and receive such salary as the board shall direct. The revised charter of the city (*Pamph. L.* 1871, *p.* 210) expressly preserved to a board of education thereby constituted the powers and duties of the pre-existing board.

A general law passed March 10th, 1892 (*Gen. Stat., p.* 3096), establishes in all cities of a class including Camden a board of education composed of commissioners of public instruction, selected in a prescribed way, and among other things provides as follows:

"Section 2. The commissioners of public instruction appointed under this act shall be and they are hereby invested with and shall possess and exercise all the same powers which by law are now vested in and exercised by the department of public instruction, boards of education, school trustees, commissioners of public instruction or other such body, by whatever name called, having the management and control of the public schools in any such cities of the second class in this state, and the said commissioners shall perform the same duties now required of or imposed by law upon any such departments, boards, trustees or commissioners in any such cities. * * *

"Section 4. The said commissioners of public instruction hereby established in such cities of the second class shall be in stead and shall take the place of, and be in lieu of, any and all other boards of education, departments of public instruction, commissioners of public instruction, school trustees or by whatever name such offices, officers, departments or boards may be called in such cities, and the offices and terms of office of any and all other commissioners of public instruction, school trustees or boards of education, or departments of public instruction except those appointed and recog-

nized by this act, shall be and they are hereby abolished, terminated and ended at ten o'clock in the forenoon on the third Monday in April next after this act takes effect.   *   *   *

"Section 6. The corporate name of such commission shall be known as 'the commissioners of public instruction of the city of ————.'   (Here insert the name of the city.)

"Section 7. All acts or parts of acts, general, special or local, and all charters or parts of charters of any city inconsistent with this act be and the same are hereby repealed, and this act shall be deemed a public act and shall take effect immediately."

Some minor powers are affirmatively granted by this act, but in the main its purpose seems to be to make a change in the mode of appointment of the commissioners, leaving their powers and duties unchanged.

The constitutionality of this act was upheld in *Oler* v. *Ridgeway*, 26 *Vroom* 10, and the Camden board of education is now organized under it.   The state of the case shows that the board has continued to appoint a treasurer annually and that the relator now holds that office.   Such treasurer has received the moneys raised by school tax directly, and has disbursed them under orders of the board.   The contention of respondent, now first advanced, is that under the act of 1892 the board has no right to appoint a treasurer, but that the general city treasurer is to act in that capacity.   There is no ground for such a contention.   The powers of the former board are all transferred to the new board.   Such a substitution is constitutional.   *In re Haynes*, 25 *Id.* 6.

It remains to consider how the Camden board of education is to avail itself of the moneys raised for the new manual training and high school building.   The theory of the board is that from time to time it may draw a warrant on the city treasurer to the order of its own treasurer, and that the city comptroller has no choice but to countersign and the city treasurer to honor it.   I think this view altogether incorrect. The city treasurer is subject only to the orders of the city council.   The city comptroller holds his office by virtue of

an ordinance passed under "An act to enable cities to create the office of comptroller," approved March 10th, 1880. *Gen. Stat., p.* 570. His duties are defined by section 4 of the act, which reads as follows:

"Section 4. That it shall be the duty of the said comptroller to sign all warrants on the city treasurer, to superintend all fiscal concerns of the city in such manner and to report thereon at such times as city council shall direct by ordinance, to keep separate accounts of all appropriations made by city council to each and every department of the city government, and to require all warrants on the treasurer to state particularly against which appropriation the said warrant is drawn; the said comptroller, upon receiving a bill or warrant, shall examine the same, and if it be for any purpose for which there is no appropriation, or the appropriation for which is exhausted, or to which, for any other cause, he cannot give his approval, he shall report the fact to the department having charge of the bill or claim against the city, and the warrant in such case shall not be signed except by special authority or direction of city council."    *    *    *

It will be seen that the comptroller also is a mere subordinate of the council. How, then, shall the fund in controversy be disposed of? It is plain that the city council has the right to see that it is devoted only to the purpose for which it was raised, and it is equally plain that the board of education has the sole right to disburse it and that the city comptroller has no duty to supervise such disbursement. It seems to me that the true course of procedure is this: When the board has need of money for the purpose for which this fund was raised it should pass a resolution reciting the special need, and requesting the city council to order payment of the requisite sum. If the council is satisfied that the demand is a proper one, it should order a warrant drawn on the city treasurer to the order of the treasurer of the board of education, and the comptroller should sign that warrant. The council cannot act captiously; it must honor a request to turn over money when really needed for the purpose for which it was raised. If the

board of education, in advance of a contract for the building, should ask for the whole fund, or for anything more than what is needed for reasonable preliminary expenses, or, after a contract is made, should ask for more than is needed to meet the payments as engaged for, I think it would be the right of the council to deny the request or postpone action thereon; but neither the council nor the comptroller has the right to repudiate the contracts of the board of education with reference to the erecting of a manual training and high school.

The result of these views of the law is that the respondent was not bound to countersign a warrant drawn by the board of education directly upon the city treasurer, and the rule to show cause why a *mandamus* should not issue compelling him to do so is discharged.