HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED,
FREDERIC W. STEVENS, MARTIN P. GREY AND
EUGENE STEVENSON, VICE-CHANCELLORS.

WILLIAM M. LANNING et al.

*v.*

THE COMMISSIONERS OF PUBLIC INSTRUCTION OF THE CITY
OF TRENTON.

[Filed March 24th, 1902.]

1. When a trust for charitable uses was created by will and the trustee appointed was a public corporation, which, under amendatory legislation, has been succeeded by another public corporation having like powers, and the latter corporation is incapable of fully performing the trust according to the true intent and purpose of its creator, the court of chancery may discharge the trustee and substitute another trustee to perform the trust.

1

2. The original trustee under the will was "the superintendent and trustee for public schools in the city of Trenton." The purpose of the trust was to establish a library for the use of the "teachers and pupils of the public schools, apprentices, mechanics and such other persons as the said corporation should deem expedient and most conducive to the public good." The corporation thus made trustee was abolished and succeeded by the "commissioners of public instruction of the city of Trenton," the members of which are selected in a different manner from that by which the members of the original trustee were selected.—*Held,* that, in substituting another trustee, the court may determine who, in addition to the teachers, pupils, apprentices and mechanics, shall be admitted to the benefits of the trust, on principles deducible from the intent of the testator in creating the trust.

Argued at October Term, 1901, and finally submitted on amended bill at February Term, 1902.

*Mr. John T. Bird,* for the complainants.

*Mr. Samuel H. Grey,* attorney-general, *pro se.*

MAGIE, CHANCELLOR.

This is a bill filed by William M. Lanning et al., citizens of the city of Trenton, in behalf of themselves and all others similarly situated and interested in the matters exhibited in the bill, against Samuel H. Bullock et al., as individuals, and "the commissioners of public instruction of the city of Trenton."

The bill states that on or about the          day of May, 1879, Charles Skelton died, leaving a last will and testament and a codicil thereto, which were afterwards admitted to probate by the surrogate of the county of Mercer.

The pertinent portions of the will and codicil may be thus described: He thereby bequeathed to "the superintendent and trustees for public schools in the city of Trenton," and their successors in office, his library and bookcases, in trust for the use of teachers and pupils of the public schools of the city, apprentices, mechanics and such other persons as the said corporation should deem expedient and most conducive to the public good; and after directing the investment of the residue of his personal property, and giving the income upon such investments to certain persons named for life, he bequeathed such income, after

the death of the last of the life beneficiaries, to "the superintend-ent and trustees of public schools for the city of Trenton," for the purposes thereinafter described. After devising his real estate to different persons for their natural lives, he devised the remainder, after the termination of the life estates, to "the superintendent and trustees of public schools for the city of Trenton," for the purposes thus expressed, viz.:

"That they and their successors in office shall have and hold the said premises and properties, take and receive the rents, issues and profits accruing from same, and therewith make all necessary repairs, or rebuild, and pay all taxes and necessary expenses and charges in and about the same and keep the same sufficiently insured against loss by fire, and after such payments deducted, they shall invest once at least every year the clear net income of the same in good books, which shall always be added to the library which I have bequeathed to the said corporation. It is my will and I do order and direct that all the books purchased by the aforesaid income of said property shall be strongly and firmly bound, and shall consist of works, treatises on the arts and sciences, especially on mechanics, engineering, mathematics, astronomy, geography, natural philosophy, chemistry, architecture, history, travels and biography, but no mere tales and works of fiction. Truth is always more profitable than falsehood, life is too earnest and time too precious to be wasted on fictions which give no knowledge. A single great practical trust is of more value than all the fictions ever invented by novelists. I acquired the property hereby devised by a life of honest industry, frugality and temperance, and I desire that it may be employed to inculcate these virtues, without which our republican institutions, based on the sovereignty of the people, must soon perish."

The codicil did not materially vary the provisions of the will in the respects above mentioned.

The bill states that some of the complainants are teachers employed in the public schools of the city of Trenton, and others are mechanics of said city, and that all of the complainants are interested in the trust created by the will of Charles Skelton, and are beneficiaries therein, entitled to the full benefit and advantage thereof.

The bill further states that at the time of the death of Charles Skelton there was a corporation existing by the title of "the superintendent and trustees of public schools of the city of Trenton," created by the act entitled "An act respecting public schools in the city of Trenton," approved March 10th, 1856. *P. L. of 1856 p. 175.*

An examination discloses that the corporation created by that act was thereby given power to take and hold in their corporate name, such estates, real, personal or mixed, as might from time to time be conveyed to it by gift, grant, devise or any other lawful mode, for the purpose of promoting the cause of public education in said city, and may execute any trust having such object in view.

The bill further states that by the provisions of the act entitled "An act to provide for the establishment of a commission of public instruction in cities of the second class in this state, whose population now exceeds or may hereafter exceed fifty thousand," passed March 10th, 1892 (*Gen. Stat. p. 3096*), the previous corporation, "the superintendent and trustees of public schools of the city of Trenton," was abolished, and a new corporation took its place, under the name of the "commissioners of public instruction of the city of Trenton." An examination of that act discloses that the commissioners of public instruction thereby provided for, were invested with and declared to possess and exercise all the powers vested in the previous corporation having the management and control of the public schools in the city of Trenton. The last-named act has been declared by the supreme court to be within the constitutional authority of the legislature. *Oler* v. *Ridgeway, 26 Vr. 10.*

The supreme court further construed the last-named act as not abrogating or diminishing the powers or duties of previously existing school boards in the various cities to which it applied. It was held that the purpose of the act was to change the mode of selection of the school board, which was thereafter to have the powers of the previously existing school board and some additional power thereby granted. *Rose* v. *Hufty, 34 Vr. 195.*

The bill further charges that the life beneficiaries under the will and codicil have all died, and that the last-named corporation, the commissioners of public instruction of the city of Trenton, have come into the possession of the fund created by the will of Charles Skelton, and have now in their possession about $8,000, invested, upon which they receive the income, and have received and are receiving the rents of the real estate.

The bill further charges that under the provisions of the act entitled "An act to authorize the establishment of free public libraries in the cities of this state," passed April 1st, 1894 (*Gen. Stat. p. 1950*), the city of Trenton has accepted the provisions of the act and has established a scheme for a public library, and appointed trustees thereof, who have become a body politic and corporate, designated as "the trustees of the free public library of the city of Trenton," and that said corporation has contracted for the building and erection of a library building within said city, having a capacity to store and hold the books of the library of Charles Skelton and such books as shall be acquired by the use of the income of the trust fund and real estate, according to the provisions of the will and codicil.

The prayer of the bill is that "the commissioners of public instruction of the city of Trenton" may be discharged from their office as trustees of the Skelton fund, and that " the trustees of the free public library of the city of Trenton" may be appointed trustees thereof, and authorized and directed to execute and carry out the trusts created by the will and codicil of Charles Skelton, according to its true intent and spirit, with proper restrictions in respect to segregating the books already acquired or hereafter to be acquired under the trust from other books in the public library.

No answer has been filed to the bill, but proofs have been taken which establish the following facts: The will and codicil make no provision for the erection of a library building to house and contain the library directed to be purchased by the provisions of the Skelton will and codicil. The commissioners of public instruction are not authorized to employ or pay a librarian to manage the books. The books which came from the bequest of Charles Skelton, and some few books which have been purchased out of the income, are now in a room of the high school of the city of Trenton. During school hours they are accessible to the teachers and pupils of that school, but manifestly many of the other persons intended to be benefited by his library are not capable of enjoying it during those hours. The commissioners frankly confess their inability to execute and properly discharge the trust which has devolved upon them by this will

and codicil and express themselves willing to abandon their trusteeship if permitted by the court, and if the court will give authority to the trustees of the free public library to take up and execute the trust.

It further appears that the trustees of the free public library are willing to accept the trust upon terms that seem to indicate that the trust will be performed in the manner prescribed by the will and codicil, and with the effect that those intended to be benefited will receive the benefit and advantage contemplated by the testator. They offer to separate the Skelton books from the other books which are to be acquired by them, and to designate those books which are to be acquired by the income of the Skelton fund by some appropriate mark to indicate that they were thus acquired. They propose to provide for the distribution of the books, to care for and repair them, and to manage the fund without any charge upon it.

If this disposition of the trust property can be made, it will result that the fund, which is now practically of no value to a majority of the persons designed to be benefited by it, and of very little benefit to any part of such persons, may be made beneficial in the broadest sense and widest spirit of the will of the donor.

The power of the court of chancery to remove or discharge trustees and to appoint new trustees in their place is very broad. It exists and will be exercised when there is a failure of suitable trustees to perform the trust either from original or supervenient incapacity to act. *2 Story Eq. Jur. 1287; Harvard College* v. *Society, &c., 3 C. E. Gr. 280; Perry Trusts 275, 280, 921.* It is said that the court may appoint new trustees whenever such action is necessary to protect the rights of the beneficiary. *2 Pom. Eq. Jur. 1087.* When a trustee desired discharge because of multiplicity of business and infirmity of age, a new trustee was appointed. *O'Kill* v. *Campbell, 3 Gr. Ch. 13.* Incompetency from long continued illness was declared to require the substitution of another trustee. *Babbitt* v. *Babbitt, 12 C. E. Gr. 54.*

It is obvious, in my judgment, that by the provisions of his will and codicil the testator created a trust for charitable pur-

poses. His design was to collect a library of useful and instructive books, by the use of which the cause of public education would be promoted. It is also obvious that "the superintendent and trustees of public schools of the city of Trenton," incorporated under the above-cited act of 1856, was endowed by the legislature with capacity to receive and manage the property bequeathed and devised for that public purpose. I deem it equally clear that "the commissioners of public instruction of the city of Trenton," organized under the above-cited act of 1892, has succeeded to the trust created by the will and codicil in question, and are now properly holding and managing the property which it received from the previously existing corporation, and which it now has in possession and control.

It is, however, incontestible that the present trustee is in fact incapable of administering the trust so as to fulfill the intent of the testator who created it. If retained as trustee, it is impossible to discover how the benefits of this trust can be applied to those for whom it was designed. This happens not from any dereliction of duty or any misconduct on the part of the trustee, but wholly because the donor of the trust has expressly directed that the whole of the net income of the fund should be applied to the purchase of books, and because it possesses no power to raise money to pay for a librarian to care for and distribute the books or to erect a building for the library. The trustees of the free public library of the city of Trenton are empowered by the eighth section of the act of 1884, above cited, to have and receive, hold and manage any devise, bequest or donation heretofore made, or hereafter to be made or given for the establishment, increase or maintenance of a free public library in that city. By section 5 of the same act they are empowered "generally to do all things necessary and proper for the establishment and management of the free public library" in such city.

I think it does not admit of doubt but that the last-named corporation has power to act as trustee of the fund in question in this case. If appointed as trustee, its acceptance of the trust will bind it to the performance of the duties devolved upon the trustee by the trust under the supervision and direction of this

court. It is obvious that if the substitution of that corporation as trustee can be made, and it will accept the trust, the purposes of the creator of the trust will be substantially carried out.

As this is a public trust, the attorney-general, representing the public, is a necessary party to the litigation. The general practice seems to be that a bill of this sort in a matter of a public trust is filed by the attorney-general, either of his own motion, or on the relation of some parties interested. In this case the parties interested have presented the bill and have made the attorney-general a party defendant thereto. No objection to this course having been made by the attorney-general, I think the proper parties are before the court, and that it is immaterial that the attorney-general is a defendant instead of a complainant. That was the view taken by the Massachusetts supreme court in *Harvard College* v. *Society, &c., ubi supra,* and it accords with reason.

Although there is no contest over this case, and the parties all assent to the decree prayed for substantially as prayed, I have deemed it my duty to examine the case with care, in order to make the substitution of a new trustee clearly effective, if it can be done. I have discovered no reason for not acceding to the request to appoint a new trustee, and conclude that such appointment should be made and the present trustee should be discharged, upon the ground that the latter is practically incapable of performing the trust according to its true intent and purpose. The only question that has suggested itself to my mind relates to the direction of the testator in respect to the persons who are to share in the benefits of the public trust. The substituted trustees will have no difficulty in determining that it must admit to the use of the library the teachers and pupils of the public schools of the city, and apprentices and mechanics. But the donor intended that other persons should be admitted, and cast upon the trustee whom he appointed the duty of adjudging who such other persons should be, upon their judgment of expediency and public good.

It has occurred to me that there may be some question with respect to the future management of the trust in this respect.

It may be claimed that a personal confidence was committed to the trustee appointed by the donor to execute this trust. But the trustee appointed by the donor was a public corporation composed of members selected in a certain way. It was to that corporation that he committed the duty of selection of beneficiaries. That corporation has been abolished and another corporation has taken its place, the members of which are selected by another mode. The testator did not design to commit the judgment in respect to those to be admitted to the benefit of the trust to be made by the succeeding corporation. If the present trustee was practically capable of performing the trust I think it would be questionable whether it could exercise the power of determining who should be admitted to the benefit of this trust. If this is so, this court may direct how the trust should be managed and conducted, and will itself determine who should be admitted to the benefits thereof, on the principles laid down by the testator. In substituting a trustee, the court may do the same. Upon the removal of a trustee of a private trust to whom was given the expenditure of an income in the support of himself and his family in such manner and to such extent as to him would seem proper, Chancellor Runyon declared that this court would determine how much of the income should be applied to the support and maintenance of the family and for the education of the minor children. In dealing with a public trust, I think a like course may be taken. In view of the intent of the testator, shown by his will, I am satisfied that such intent will best be carried out by admitting to the benefit of this trust, in addition to teachers and pupils of the public schools, apprentices and mechanics, all other reputable citizens of the city of Trenton, and I think the substituted trustee should be directed to admit all such persons. The complainants may have a decree on the lines of this opinion, with liberty to the substituted trustee, on accepting the trust, to apply to the court for directions, if necessary.