On March 7th, 1844, The Trenton Saving Fund Society was incorporated by special act of the legislature (P.L. p. 170) and given power in section 8 of that act to keep a book in which any depositor might name some person to whom, in the event of the depositor's death, the money should be paid, if not otherwise disposed of by will; and that on payment in such manner the society would be discharged of all obligations.
The present Wills act was passed March 12th, 1851 (Comp. Stat.p. 5860), and provides for the legal manner of disposing of personal property by any person upon his decease. An examination of this act discloses no general or special repealer of inconsistent statutes and it appears that there is no like general or special repealer in any subsequent amendments or supplements thereto.
The Trenton Saving Fund Society, pursuant to section 8 of its charter, and pursuant, further, to section 13 of its by-laws, kept a book or books in which appointments were made in form and manner, according to the act, up to the date of the filing of the bill. The society was advised some time since that there was a question concerning the validity of these appointments owing to possible conflict of the Wills act, and, therefore, it has not used the power in question granted in the charter for several years.
The parties defendant in this matter constitute those now living and named in three of the appointments. And the attorney-general of New Jersey has been made a defendant, representing the public, but he has not answered. Nor need he, if the trust is a private one, for if so he is neither a necessary nor a proper party. No defendant has answered.
The purpose of this proceeding is to determine the rights of the complainant and its legal status under these appointments.
This proceeding is brought under the act concerning declaratory judgments and decrees (P.L. 1924 p. 312), whose constitutionality was upheld by our court of errors and appeals in McCrory Stores Corp. v. S.M. Braunstein, Inc., 102 *Page 273 N.J. Law 590. And Vice-Chancellor Backes in Paterson v.Currier, 98 N.J. Eq. 48, held that chancery only has power to make declaratory decrees where equitable questions are involved. The appointments here constitute a trust, and this court has power to enforce it (Caruso v. Caruso, 103 N.J. Eq. 487), if it be valid.
A preliminary question is, Is this a public or a private trust? A public trust is one for the benefit either of the public at large or some portion of it answering to a particular description, as a public charity; while a private trust is one wherein the beneficial interest is vested absolutely in one or more individuals who are, or may be within a certain time, distinctly ascertained. 3 Bouv. L. Dict. (Rawle's 3d rev.)3330.
In Lanning v. Commissioners of Public Instruction, 63 N.J. Eq. 1,
Chancellor Magie said (at p. 8), that in a public trust the attorney-general, representing the public, is a necessary party to the litigation, and that he may be complainant in a bill either of his own motion or on the relation of some interested party, or he may be a defendant thereto; that it is immaterial whether he be complainant or defendant. And if this trust is not public the attorney-general is not properly before this court herein.
Now this trust, within the definition quoted above, is a private trust. Consequently, the attorney-general is not properly here, and is entirely justified in not answering — in fact, there is nothing for him to answer. He could have moved to strike out, now substituted for demurrer.
In Gordon v. Toler, 83 N.J. Eq. 25, where a depositor signed a printed form directing the bank to add her sister's name to the account, giving them joint rights therein, and to pay the deposit to either or to the survivor, Vice-Chancellor Stevens said that the question arose as to whether there was a gift of what remained at her death; that the effect of the word "survivor" was considered in Stevenson v. Earl, infra, and it was there held that the act was * * * testamentary and could not be effectuated by a paper like that in controversy, because not made in the manner prescribed by the statute of *Page 274 
wills. The vice-chancellor further remarked that Stevenson v.Earl would undoubtedly rule the controversy were it not for section 27 of the act concerning savings banks (4 Comp Stat.p. 4703 § 27), providing that a deposit made in the name of two persons payable to either or to the survivor, may be paid to either, whether the other be living or not, the latter act being intended only to protect savings banks, and that the two statutes might stand together; but that so far as any testamentary disposition of what remained at the death of the testator, it was not operative.
Counsel for the savings institution argues that the Wills act does not repeal the provisions of the charter of the Saving Fund Society (P.L. 1844 p. 170 § 8); and that, because it contains no repealer, specific or general. I disagree. Without any kind of repealer a later statute repeals a former if they apply to the same subject and are inconsistent with each other.
In Tomlin v. Hildreth, 65 N.J. Law 438, the supreme court held that repeal by implication is not favored, but where the language of a later act covers the whole subject of a former statute, its repeal by implication follows. There the acts which were before the court for construction were one of 1874, which limited the right to institute a suit for false imprisonment to four years, and the supplement of 1896, which limited the right of action in cases for personal injuries to suits commenced within two years; and the court held that it was evident that the intent of the legislature in passing the act of 1896 was to cover all actions for injuries to persons which could arise out of the unlawful act of any person, c., and this led the court to bar the action after two years from the date the cause thereof had accrued. This doctrine applies to a portion of a prior act as well.
All consistent statutes, which can stand together, though enacted at different dates, relating to the same subject, and hence, briefly, called in pari materia, are treated prospectively, and construed together, as one act. Farrell v.State, 54 N.J. Law 421. But where an act is plain and unambiguous in its terms, the rule is fundamental that there is no room for judicial construction, since the language employed is presumed *Page 275 
to evince the legislative intent. In re City of Passaic,94 N.J. Law 384.
The act of 1851 was not the first Wills act in New Jersey. There was one of 1714, and Chancellor Green, as ordinary, said inMundy v. Mundy, 15 N.J. Eq. 290 (1858 — at p. 292), that there was no difference, as to the attestation and execution of a will, between the acts of 1714 and of 1851, except as to the number of witnesses. The act of 1714 (Allinson's Laws p. 27 §2) declared that all wills should pass any lands and otherestates whatsoever (which would appear to include personal property, Den v. Snitcher, 14 N.J. Law 53, 63); and the Wills act of 1795 (P.L. p. 10 § 12) provided that persons may dispose of personal estate by will or testament in writing, as formerly might lawfully be done.
Assuming that the charter of the complainant (P.L. 1844 p.170), which in section 8 authorized it to keep a book in which any depositor might name some person to whom, in the event of his death, the money should be paid if not otherwise disposed of by will, amended pro tanto the act of 1714, and other inconsistent provisions of acts concerning wills previously passed, nevertheless, did not the Wills act of March 12th, 1851 (Comp.Stat. p. 5860 § 24), which provides for the manner of disposing of personal property by any person upon his decease, being passed after the act of 1844, repeal that act, so far as it permitted a testamentary disposition to be made of a deposit in the manner indicated therein? The act of 1851 says that all wills and testaments of persons dying after July 1st, 1850, "shall be in writing, and shall be signed by the testator * * * and such writing declared to be his last will, in the presence of two witnesses present at the same time, who shall subscribe their names thereto, as witnesses * * *; and all wills and testaments of persons dying since the date above mentioned made in the manner herein prescribed * * * shall be sufficient to devise, pass, and bequeath all estates and property, real and personal, and all rights of any kind," c. This, it will be seen, is clearly an exclusive requirement with reference to a valid testamentary disposition of personal property, and is therefore necessarily at variance with the provisions of the act of 1844, page 170, *Page 276 
section 8, which makes the method of disposing of the bank account of a depositor to take effect after his death — if he makes such an appointment on the books of the society — without his complying with the requirements of the statute of wills in the disposition thereof. In the words of the Tomlin Case
(65 N.J. Law 446), "where the language of a later covers the whole subject-matter of a former statute, its repeal by implication follows." And so here. The Wills act covers in toto the provision of the former act as to testamentary disposition.
Counsel for complainant contends that there is no inconsistency between the provision in the Wills act and the charter of the complainant, and that therefore both may stand together, citingState v. Commissioners of Railroad Taxation, 38 N.J. Law 472
(at p. 475). There Mr. Justice Van Syckel, speaking for the court of errors and appeals said: "If the general law of 1851 had enacted that all the lands of every railroad corporation in this state, without exception, should be liable to taxation under its provision, it would have applied, necessarily, to the Morris and Essex railroad, and the general repealer would have swept away any inconsistent provisions in its charter; a general repealer in a general tax law can not disturb the provisions of a special charter because they are wholly different; they are not inconsistent — they both may stand independent of each other. They become inconsistent when the general law, by clear expression is made to embrace and is applied to the particular corporation, and its inconsistent provisions are then brought within the reach of a general repealer."
Now, the Wills act is a general law which provides the only method whereby any person may dispose of land or personal property, to take effect upon his death, and that, within the case of State v. Commissioners of Railroad Taxation, the Wills act, so far as respects bequests, being entirely inconsistent with the provisions of the charter of the complainant, repeals the same so far as testamentary disposition is concerned, by clear implication, that is, legislative intent; without any general or special repealer of the provisions of any inconsistent act. *Page 277 
 Knorr's Appeal, 89 Pa. St. 93, is cited as being on all fours and directly in point with the case at bar. In that case it appeared that a charter was granted to the Philadelphia Saving Fund Society in 1819, which made provision that a book should be kept in which every depositor should be at liberty to appoint some person or persons to whom, in the event of his death, the money should be paid, if not otherwise disposed of by will. And the Wills act of that state was passed in 1883 (Laws p. 249) and contained a general repealer of inconsistent acts. Mr. Justice Paxson delivered the opinion of the Pennsylvania supreme court and held that the act of incorporation of the Philadelphia Saving Fund Society was within the recognized powers of the legislature and an appointment in pursuance of it was valid. And on the question of the conflict between the special act incorporating the society and the Pennsylvania statute of wills, Mr. Justice Paxson (at p. 96), had this to say: "It is further objected that the writing referred to was a disposition of his property by George Knorrs to take effect after his death and therefore a will, and not being in conformity with the statute of wills, is not valid. This might be so but for the act of assembly which expressly authorized it. Such act being within the recognized powers of the legislature the appointment in pursuance of it is necessarily valid."
Admittedly this Pennsylvania case is on all fours with the present one; but, the decision is flatly opposed to that of our court of errors and appeals in Stevenson v. Earl, 65 N.J. Eq. 721,
wherein Chief-Justice Gummere in the opinion said (at p.725): "The expressed intention of the deceased was only to bestow upon his wife so much of his deposit as should remain undrawn by him at his death. Such a gift, it seems to me, is purely testamentary in its character. If it is not, then it is a perfectly easy thing for a person to retain the absolute control and dominion over his moneys and personal securities during his life and transfer that dominion to another at his death, with total disregard of the requirements contained in the statute of wills, by the simple device of depositing such moneys and securities, under an agreement with the depositary that he shall have the right to use them or deal with *Page 278 
them as he pleases during his life, and that at his death so much of them as may remain shall be delivered to such person as is named in the agreement, who shall then become the owner thereof, and then delivering the agreement to the beneficiary with a statement of the same purport as that made by the deceased to his wife when he gave the passbook to her. To hold that such a method of disposing of property by the owner at his death is valid, would be to practically repeal the statute of wills in its operation upon personal property, so far as its mandatory provisions are concerned.
"Our conclusion is that the moneys remaining to the credit of Earl, at his death, in the savings funds of the Pennsylvania Railroad Company did not become the property of his wife, notwithstanding the provision in the agreement between him and the company that such moneys should be paid to her at his death, our reason for so concluding being that such agreement constituted a testamentary disposition of his property, which was invalid because not made in the manner prescribed by the statute of wills. The necessary result of this conclusion is that such moneys passed to his executors, on his death, as part of his estate." Here the appointment was made in virtue of the rules of the company and not by virtue of a statute, but if there had been an act authorizing it, such as in this case, it must necessarily have been swept aside as inconsistent with the statute of wills.
The result reached in this case is that the Wills act of 1851 repealed section 8 of the act of 1844 (P.L. p. 170), and that therefore the complainant is not entitled to a decree that the appointments in pursuance of the complainant's charter (P.L.1844 p. 170 § 8) are valid; but, as the bill prays in the alternative that if such appointments are held to be invalid and contrary to the law of this state, that it be decreed that complainant has no authorization or power to follow said provisions, and that said appointments are invalid and ineffectual trusts for the purposes therein set out; and as the act concerning declaratory judgments and decrees provides that the declaration of the court may be either affirmative or negative in form and effect, the complainant may have a decree adjudging the appointments to be invalid. *Page 279