(No. 21025.—

The People *ex rel.* Leo H. Lowe, Director of Trade and Commerce, *vs.* The Marquette National Fire Insurance Company *et al.*—(H. U. Bailey, Liquidator, Plaintiff in Error, *vs.* Frank B. Leonard *et al.* Defendants in Error.)

*Opinion filed February 23, 1933.*

JONES, J., dissenting.

SCHUYLER, WEINFELD & HENNESSY, and COOKE, SULLIVAN & RICKS, (GEORGE A. COOKE, WILLIAM C. GRAVES, GEORGE W. LENNON, CAIRO A. TRIMBLE, and C. ERNEST HEATON, of counsel,) for plaintiff in error.

SILBER, ISAACS, SILBER & WOLEY, and W. RUFUS KENDALL, (SAMUEL LEVIN, HERBERT W. HIRSH, and NORMAN A. MILLER, of counsel,) for defendants in error.

OSCAR E. CARLSTROM, Attorney General, as *amicus curiae*.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here to review the decree of the superior court of Cook county disallowing solicitor's fees for services rendered in the liquidation of the Marquette National Fire Insurance Company. That decree was affirmed by the Appellate Court for the First District, and the cause is here on *certiorari*.

The facts are not in dispute. On a petition filed in the superior court of Cook county by the Attorney General on request of H. U. Bailey, Director of Trade and Commerce, an order was entered on April 29, 1927, under the Insurance Liquidation act of 1925, (Smith's Stat. 1925, chap. 73, par. 496,) directing that the affairs of the Marquette National Fire Insurance Company (hereinafter referred to as the insurance company) be liquidated. By order of that court the director was appointed liquidator and authorized to take the necessary steps to liquidate the affairs of the company and to employ counsel and such other assistants as should become necessary to the performance of those duties. On an amended petition a new order for liquidation was entered on November 21, 1927. It approved the acts of the liquidator taken under the order entered on April 29, 1927, including the employment of counsel, and directed that Edward J. Hennessy, who had been appointed counsel under the previous order, be continued in that capacity and that such additional counsel as should become necessary might be employed. The liquidator was directed to enter such suits as were necessary in connection with claims or assets of the company and to incur and pay all necessary reasonable charges, fees and expenses in connection therewith. He was by the order directed to make report of his acts from time to time. The court fixed the first day of February, 1928, as the date on or before which claims against the company should be filed, directed the liquidator to give public notice thereof, and ordered that claims not filed by that date should be barred from par-

ticipation in the assets. The court also appointed a master in chancery of that court to hear evidence on reference concerning claims and to make report thereon. By the order the liquidator was declared vested with title to all property, contracts and rights of action of the company, as provided by the Liquidation act.

On April 28, 1928, the liquidator filed his first report. Due notice thereof was given and an order entered requiring all policyholders, creditors, claimants or other parties in interest to file objections thereto on or before the second of July, 1928. This report showed that the liquidator had had the constant assistance of Hennessy as counsel and had paid him fees amounting to $7500. No objections or exceptions were filed to the report. A second and like report showing among the acts of the liquidator the employment of Hennessy as counsel was filed on November 15, 1928. The court directed that objections thereto be filed by December 14, 1928. No objections or exceptions were filed to this report. On March 5, 1929, the liquidator filed his final report, and April 25 following was fixed as date by which objections thereto might be filed. This report showed all receipts and disbursements from the date of appointment of the liquidator to January 31, 1929, including compensation paid to Hennessy for legal services. Objections to the payment of solicitor's fees were filed by the Pioneer Fire Insurance Company, Frank B. Leonard and J. D. Monroe, of whom the first two named appear here as defendants in error and will be hereinafter designated as objectors. The basis of their objections was and is that the court was without power to authorize the employment of counsel or to allow or approve fees for legal services rendered the liquidator but that the Attorney General should have rendered all legal services required throughout the liquidation. On May 3, 1929, Bailey having resigned from the office of Director of Trade and Commerce, an order was entered discharging him as liquidator

and all matters of his report were approved except as to the fees for legal services objected to. Bailey was succeeded by Leo H. Lowe as such director, and on that date the superior court entered an order appointing Lowe liquidator and transferring the matters of the liquidation to him. On the hearing on objections to Bailey's report the evidence showed, without contradiction, that the services rendered by Hennessy were the usual and necessary legal services required in the liquidation of a defunct insurance company, and that the compensation up to that time paid, amounting to $17,500, was reasonable and proper in amount. Of the further unpaid claim of Hennessy for $5000, $4962.50 was shown, without controversy, to be reasonable and proper in amount. It was also shown on this hearing that the liquidator was advised by the Attorney General that the latter was not required or authorized to furnish legal services in liquidating the insurance company's estate. No issue was made of the reasonableness of the legal fees paid by the liquidator or allowed by him, as shown by his report, and no question of that character is raised here. No evidence was offered in support of the objections filed, the matter being presented on a pure question of law as to the authority of the liquidator to employ, or the superior court to authorize employment of, counsel. The evidence also shows, without dispute, that in the liquidation of the insurance company over 8000 miscellaneous claims were filed, 835 of which were for losses. A number of lawsuits in various parts of the United States were tried or otherwise disposed of. Sixty thousand policies were filed with the liquidator for return of premium. Domestic claims amounting to $1,190,990, and approximately $300,000 in European claims, were filed. There were re-insurance contracts in more than thirty different insurance companies involving claims for return of unearned premiums. The liquidation required more than two years, during which time the services of Hennessy as counsel for the liquidator were al-

most constantly required. These facts were found in the final decree of September 27, 1930, from which appeal was taken. The decree approved all disbursements of the liquidator except counsel fees and other small items not involved in this review. The superior court in its final decree held that it did not have power to authorize and direct the liquidator to employ counsel or pay him for his services or to approve the liquidator's acts in so doing; that its order previously entered was void, and that such fees should be disallowed and as far as paid should be accounted for by the liquidator. The Appellate Court affirmed that decree on the ground of want of power in the superior court to authorize or allow counsel's fees.

Counsel for objectors here say that it is the duty of the Attorney General to represent the liquidator in all legal matters arising out of the liquidation of an insurance company; that the statute is intended to so provide, and that if it does not, still such services are within the common law powers and duties of the Attorney General and the legislature cannot deprive or relieve him of them. Plaintiff in error, on the other hand, contends that the liquidation of an insurance company is an adjustment of purely private rights in which the State is not interested; that legal services rendered in connection therewith do not come within the powers and duties of the Attorney General; that the act contemplates the payment of necessary attorneys' fees as part of the expenses of the liquidation, and that whether this is so or not, the court had power and authority to order the procurement of necessary services of counsel and authorize payment of his fees.

The act in relation to the liquidation of delinquent insurance companies, in so far as material here, provides that when the affairs of an insurance company have come within any of the conditions enumerated in section 2 thereof the Director of Trade and Commerce shall report such condition to the Attorney General, who shall apply, by petition

of the director, in the name of the People, to the circuit court of the county in which the principal office of the company is located, for an order directing such company to show cause why the director should not take possession of its property and conduct its business, and for such other relief as the nature of the case and the interest of the policyholders, creditors, members, stockholders or the public may require. Section 3 provides that on the petition required in section 2 the court may, in its discretion, issue an injunction restraining the company and its officers and agents from transacting business or disposing of its property until the further order of the court, and the court shall, on hearing, either deny the application of the director or direct him to take possession of the property and conduct the business until such time as it shall appear that the ground for so taking possession by the director has been removed, when he may, through the Attorney General, apply for an order returning the affairs of the insurance company to its own officers. Section 4 provides that when a petition has been filed by the director under section 2 and a hearing had thereon, if the court on such hearing shall decide that a liquidation of the affairs and the business of the insurance company should be made, such liquidation shall be made by the director as the court may direct. The director by such order becomes the liquidator, vested with title to the property and contracts of the company and with full power to make disposition thereof. By that order the rights and liabilities of the company, and of all dealing therewith, shall, unless otherwise directed by the court, be fixed as of the date of the order directing liquidation. Section 7 provides that where the court shall direct the director to take possession of the property of a non-resident or foreign insurance company, the rights and duties of the director in such matter shall be those usually exercised by and imposed upon ancillary receivers of non-resident or foreign corporations. Section 8 provides: "For the pur-

poses of this act, the director shall have power to appoint, under his hand and official seal, one or more special deputies, as his agent or agents, and to employ such clerks and assistants as may by him be deemed necessary, and delegate to each of such persons such power to assist him as he may consider wise. The compensation of such special deputies, clerks and assistants, and all expenses of taking possession of and conducting the business of liquidating any such company shall be fixed by the director, subject to the approval of the court, and shall on certificate of the director, be paid out of the funds or assets of such company. During the progress of any proceedings taken under this act, none of the powers given to the director by the statutes of this State shall be suspended and for the purposes of this act, the director shall have power, subject to the approval of the court, to make and prescribe such rules and regulations as to him shall seem proper." Section 11 is as follows: "The mode of summoning parties into court, rules of practice, course of procedure, and powers of the court, in all cases arising under this act, shall be the same as in ordinary proceedings in equity in this State, and as by law provided."

It will be observed that sections 3 and 4 provide for two separate situations. The provisions of the former relate to the conduct of the business of the insurance company by the director, while section 4 provides for the liquidation of the company's assets, and, of course, in no way involves the conduct of insurance business. In the former the Director of Trade and Commerce acts as such director; in the latter he acts as liquidator to dispose of the assets and distribute the funds derived therefrom among the creditors.

Counsel for objectors base their contention that the Attorney General is required to perform all legal services in the matter of liquidation, on the ground that the State is an interested party because the business of insurance is

charged with a public interest and the Attorney General is always required to represent the State. The first question presented on this branch of the case therefore is whether it lies within the powers and duties of the Attorney General to represent the liquidator in closing up the affairs of an insurance company. That the business of insurance is charged with a public interest is conceded, but whether the liquidation of an insurance company and disposal of its assets is a matter in which the State is interested and so is a public function, or is in reality the adjustment of the private rights of the company and parties dealing with it and so a private matter in which the State is not interested and for which public funds should not be expended, presents the pivotal question on this branch of the case. It is conceded that the Attorney General is the chief law officer of the State and that he is required to represent the State where it is properly a party. This court has frequently held in cases where a right of appeal was involved, that the words "in which the State is interested as a party or otherwise," used in the Practice act, means a direct and substantial as contra-distinguished from a nominal interest. (*People* v. *Mitchell,* 317 Ill. 439; *People* v. *Continental Beneficial Ass'n,* 280 id. 113; *Hitchcock* v. *Greene,* 252 id. 519; *Hodge* v. *People,* 96 id. 423.) The State is not directly interested in a lawsuit where its only concern is to see that its citizens are protected in their rights, though such rights may have been provided by laws enacted under the police power, such as regulations imposed upon public utilities and the like. No one will contend that because there was sufficient public interest to form the basis of regulatory legislation the State is bound to provide legal services necessary to procure for private parties their rights under such regulations. If such were to follow, the State should furnish counsel whenever banks, public utilities, or others engaged in a business charged with a public interest, become involved in litigation.

Counsel for objectors say that the cases above cited relate only to appeals. They assert, but do not point out, the inapplicability of those cases to the question as to what constitutes the interest of the State in a legal proceeding. They seem to concede, as they must, that the Attorney General is not required or empowered to represent the State when it does not have a direct and substantial interest in the litigation. Interest of the State in litigation is in those cases defined, and we are unable to follow the inference that the State is to be represented by the Attorney General though it does not have such an interest as is defined by the cases relating to appeals. In any event, the interest of the State must be present before the Attorney General is required or authorized to appear.

The State has no more interest in collecting the assets of an insurance company and distributing them to its creditors than it has in settling any other private controversy. The fact that insurance is a business bearing a public interest and a defunct insurance company was once engaged in that business does not of itself establish that such public interest continues after the company ceases to do that business. It is the insurance business that bears the public interest. The State is, of course, interested in seeing that all parties have their rights under any given condition, and to that end has by legislation provided the machinery for the disposition of the assets when an insurance company no longer continues in the insurance business. The State may also be said to be interested so long as it appears that the affairs of the company may be straightened out and the company continue in business. So under section 3 of this act it is provided that the Director of Trade and Commerce may on order of the court, where it appears that the affairs and business of the company may be righted and the company allowed to resume business, take charge of such company's affairs and continue in control thereof until such time as the business of the company may be safely turned

back to its officers. Such a proceeding is based on the public interest in keeping the insurance company going—in other words, in the safe conduct of the business of insurance. The Attorney General is therefore properly required by the statute to represent the director in filing the petition to take charge of the affairs and the petition to dismiss the proceeding and return the affairs to the company under section 3. In such a proceeding the director does not act as liquidator, for liquidation does not take place. He does not become a liquidator until the court has determined that the insurance company can no longer engage in the business but that its affairs should be liquidated. There being, for that situation, provided an economical method of liquidation by a State officer under supervision of the courts, the liquidator proceeds to dispose of the assets for the benefit of the creditors.

What are the realities of such a situation? Certainly the State cannot be said to be interested in the outcome of such liquidation though it be interested in the insurance business, for there is then no insurance business to be done. Such a situation is not lacking in analogy to the estate of a decedent, for which the State has provided a public administrator. Because of the general public interest in the administration of estates of decedents a statute has been enacted creating the office of public administrator. That officer is to be appointed by the Governor. He is a State officer just as a Director of Trade and Commerce is a State officer. (*Ramsay* v. *VanMeter*, 300 Ill. 193.) Under conditions named in the statute the court is required to appoint him. It has never been supposed, however, that the Attorney General must represent him in the settling of an estate where the services of counsel are necessary. Under section 50 of the Administration act his expenses are allowed to be paid out of the estate, yet if it must be held that a State officer cannot act in any other capacity and that it is the Attorney General's duty to represent him as

an officer of the State, then to permit a public administrator to employ counsel and pay his fees from the estate administered would be to deprive the Attorney General of some of his powers and duties, and this though admittedly the public at large is not interested in the disposition of the property and effects of the decedent. No such construction of that statute or of the powers of the Attorney General could have been contemplated.

The reality of the situation here is, that in the liquidation of an insurance company only private rights are involved. They are to be determined by the laws governing the contracts of the company and the private rights of claimants. The State, when a liquidator has been appointed for an insurance company, in effect says to the creditors: "The law has fixed your rights; proceed to procure them as fully as the assets of the company will permit." Who other than policyholders and other claimants are interested? Certainly not the general public. Liquidation has removed the affairs of the company from such general public interest. It has long been the rule under the common law that the Attorney General may not appear in cases in which the public generally is not interested. It is pointed out in *Attorney General* v. *Garner*, 2 King's Bench, 480, that the Attorney General may not appear where but a part of the public are interested. On liquidation of an insurance company the interests of policyholders and other claimants alone possess the field, and this not because they are a part of the public but because they have contracts with and claims against the company. Contract rights are private rights. The insurance company is a private corporation that had been conducting its business for private gain. Surely service rendered solely to secure private rights cannot be said to be a public service. It must follow that legal services rendered during the period and in the process of such liquidation have in them no element of public service but are for private benefit, only. It is recognized, not only in

this State but elsewhere, that the Attorney General has no duty to perform in the adjudication of purely private rights or for the redress of private grievances. The functions of that office must be confined solely to matters concerning the State or the public generally. (*People* v. *General Electric Railway Co.* 172 Ill. 129; *Attorney General* v. *Clark,* 167 Mass. 207, 45 N. E. 183; *People* v. *Police Justice,* 41 Mich. 224, 2 N. W. 25; *Attorney General* v. *Albion Academy and Normal Institute,* 52 Wis. 469, 9 N. W. 391; *Trenton Savings Fund Society* v. *Wythman,* 104 N. J. Eq. 271, 145 Atl. 462; *Saint* v. *Allen,* 172 La. 350, 134 So. 246.) In *Hunt* v. *LeGrand Roller Skating Rink Co.* 143 Ill. 118, it was held that the Attorney General may not participate in a suit that has for its real purpose the collection of claims of private persons against private corporations though such suit be in the form of an action to dissolve a corporation, in which matter the Attorney General, when acting for the State, may properly appear. It was held that the proceeding there under consideration was one intended to give a remedy in the nature of a creditors' bill and designed to aid creditors in the collection of their debts, and that the act under which the proceeding was taken was not intended to make the State or the Attorney General an agent for the collection of debts and the latter was not authorized to file proceedings under that act.

Counsel for objectors say that the duty to represent the liquidator comes within the common law duties of the Attorney General, and if this act be construed as either in terms or by implication depriving him of any of his common law powers or duties it is invalid, for the reason that the legislature may not take away the common law powers of the Attorney General. They cite in support of this argument *Fergus* v. *Russel,* 270 Ill. 304, holding invalid an appropriation to employ counsel to assist the superintendent of insurance in the prosecution of violations of the insurance statute and for expenses incident to such prosecution.

To this argument plaintiff in error's counsel reply that if the opinion in *Fergus* v. *Russel, supra,* is to be construed as implying that the legislature cannot limit or take away common law powers of the Attorney General it stands alone in American jurisprudence on that subject. Many cases are cited in support of that argument. They also cite cases to show that this court has recognized as valid the power of the legislature to take away common law powers of the Attorney General. Of course, if the State is not a party to or so interested in the process of liquidating an insurance company as to require or authorize the services of the Attorney General during such liquidation—and we hold that it is not—the power of the legislature to deprive the Attorney General of any of his common law powers does not here arise, and *Fergus* v. *Russel, supra,* as construed by counsel for objectors, does not apply.

Counsel for objectors also argue that the purpose of the Liquidation act is to declare as a matter of public policy a direct interest of the State in such liquidation; that because of waste and delay in administration of receiverships by receivers appointed by the courts the legislature has turned the whole matter of such liquidation over to the executive department for administration; that while the court appoints the liquidator, the statute gives no option as to who shall be appointed but requires that it be the Director of Trade and Commerce, and that when acting as liquidator the director does so as a State officer and not as an officer of the court. They cite *Ex parte Chetwood,* 164 U. S. 443, 41 L. ed. 782, and *Commonwealth* v. *Allen,* 240 Mass. 244, 133 N. E. 625, in support of this contention. An examination of these cases and applicable statutes shows that under the Federal act and that of Massachusetts it is intended that the receiver in one case and the commissioner in the other shall act independent of the courts. From various sections of the Liquidation act of this State, however, the difference between those statutes and our Liquida-

tion act clearly appears. It may well be that the legislature sought, by requiring that a State officer be appointed liquidator, to avoid the waste and delays incident to administration of such matters by receivers especially appointed, but that fact does not show that such officer is to act only as an administrative officer, independent of the courts.

Counsel for objectors also say that the act requires the Attorney General to file a petition for dissolution of the company after the liquidation has been completed, and that such provision shows an intention that the director act only as an administrative officer and that the Attorney General shall furnish the necessary legal services to him throughout the liquidation. Section 4 of the act provides that the liquidator may apply to the court having the liquidation before it for an order dissolving the company after liquidation, but it does not require that such application be filed by the Attorney General, and under the ruling of this court in *Hunt* v. *LeGrand Roller Skating Rink Co. supra,* the Attorney General may not act where the dissolution of the corporation is merely incidental to a proceeding to aid creditors to collect their debts, though he may under section 1 of an act providing for the dissolution of corporations in certain cases, (Cahill's Stat. 1931, p. 763,) institute proceedings to dissolve a corporation for non-user of its franchise. The State being a party to the unused charter contract is in such a case an interested party. Here the dissolution of the company, if applied for, does not fall within the duties of the Attorney General.

Does the liquidator act independent of the court and not as a court officer? There is no constitutional inhibition against his acting as an officer of the court. Courts may be authorized to appoint officials whose duties are not strictly judicial, and the legislative department may likewise authorize appointment by an executive officer of persons who shall act under the jurisdiction of the court. The separation of powers in our form of government does not

call for a closer adherence to the line. (*People* v. *White*, 334 Ill. 465; *People* v. *Brady*, 275 id. 261; *People* v. *Morgan*, 90 id. 558.) As we have said, the director does not become liquidator merely by filing the original petition but by the order of the court that he so act. It is clear that the act gives to the liquidator no powers independent of the court. His acts are subject to the approval of the court. His reports must be filed in and submitted to the court and approved by it. He may make rules, but subject to the approval of the court. Though styled a liquidator, his duties and relations to the court do not essentially differ from those of a receiver. The fact that the legislature has named a State officer to act as liquidator when the court determines that such liquidation shall take place does not show that he is not an officer of the court while so acting. He, while so acting, is, in effect and in fact, such an officer. Counsel for objectors say that this is not so, because the court in which the proceeding is brought does not have general chancery powers but has such jurisdiction only to the extent conferred by the act. They cite in support of this position *Hannah* v. *Meinshausen*, 299 Ill. 525. That case and others cited deal with the equitable jurisdiction of county and probate courts, which, it is generally recognized, are not courts of general chancery jurisdiction but have only such chancery powers as are conferred by statute. Section 11 of the act declares that the court in which the petition is filed shall have the ordinary equity powers. Circuit and superior courts are courts of general chancery jurisdiction, and as such, quite apart from the statute, have the general powers of the Court of Chancery. Courts of chancery have implied powers to do all things necessary to discharge the functions placed upon them by law. An agency of government intrusted and charged with certain powers must also be held to have been intrusted with ample means for their execution. (*McCulloch* v. *Maryland*, 4 Wheat. 316, 4 L. ed. 579.) To deprive a court of the

power to execute its decrees is to essentially impair its jurisdiction. Jurisdiction in a court of chancery to enter an order or render a decree includes the power to do that necessary to its execution. *Riggs* v. *Johnson Co.* 6 Wall. 166, 18 L. ed. 768.

In *State* v. *Falkenhainer,* 309 Mo. 381, 274 S. W. 721, a surety company was being liquidated by the superintendent of insurance under a statute of Missouri not essentially different from the Liquidation act of this State. All of the general assets of the company had been sold, and one McCormick, a general creditor, filed a petition in the court which had the liquidation matter before it, seeking to compel the insurance superintendent to sell the securities which had been deposited as the statutory reserve by the company. The superintendent filed a return challenging the jurisdiction of the court to order such a sale. It becoming apparent that the court would enter such an order, an original petition for prohibition was filed in the Supreme Court of Missouri and became the case to which we refer. Though the statute of Missouri lacks the specific declaration found in our statute that the court shall exercise ordinary equity powers, the Missouri Supreme Court held that the securities were under the control of the court; that the superintendent of insurance took control of the property only through court action and not independent of the court; that the fact that the superintendent of insurance must be the one appointed did not change the situation, but that he was, in fact and in effect, a receiver of the court and under its control; that the court had equitable jurisdiction of the subject matter and therefore had jurisdiction to order sale of the securities.

The case *In re Casualty Co. of America,* (Rubin claim,) 244 N. Y. 443, 155 N. E. 735, is especially persuasive, since the Liquidation act of this State is practically identical with and was modeled upon the New York act, the only difference material here being the omission of the

word "counsel" from the provisions of our act relating to assistants, clerks, etc., who may be appointed to assist the liquidator. In that case the attorney representing the liquidator made a claim of $10,000 for services, on which $1500 had been paid. Before the allowance of his claim the superintendent of insurance resigned and his successor was appointed and became liquidator. He fixed the balance to be allowed counsel at $2000. The Supreme Court, on counsel's appeal to it, fixed the value of his services at $8000 and ordered payment of the balance of $6500. The Appellate Division of the Supreme Court reversed this order, not because of the amount but on the ground that the liquidator, only, could fix the amount of such fees and that the court had no power in the matter. The cause went to the New York Court of Appeals solely on the question of the power of the court to fix counsel's fees. It was there held that the liquidator has no independent power but his acts are subject at all times to the approval of the court. It was there said: "The power of the court to liquidate this claim and direct its payment out of the assets does not depend upon the power of approval reserved by sub-section 6. * * * The power is incidental to the supervision and direction of the course of liquidation. (Section 63, subdivision 3.) By the settled practice of the Court of Chancery, one who supplies services upon the winding up of a business in the hands of a receiver may apply to the court, by summary petition, for the allowance of his claim and for payment upon allowance. (High on Receivers, sec. 254b; 19 Abb. (N. C.) 371, et seq. note.) We can not doubt that a like jurisdiction, and one equally summary, exists to-day as an incident to the judicial supervision of the liquidation of an insurance company by the statutory liquidator. * * * The power to supervise and direct the time and method of liquidation is a power to determine the extent and validity of claims arising in the

course of liquidation and growing out of its necessities. * * * Terms more distinct than any to be found in this enactment must stamp him [the liquidator] a judge before courts will be shorn of the power of supervision that would otherwise be theirs." Again, the court said, speaking of the powers of the liquidator and his relation to the court: "He may fix the rate of compensation as a trustee or an assignee for creditors, or a receiver may be said to fix it, but subject at all times to the approval of the court. The meaning is, that even when he acts the court shall have a veto."

But counsel for objectors say the omission of the word "counsel" from the enumeration of assistants and clerks who may be appointed evidences an intention on the part of the legislature of this State to deprive the court and the liquidator of power to appoint counsel and renders the New York case inapplicable. That case is not only applicable to a consideration of the powers of the court in a case arising under our statute but is a clear exposition of that power. Counsel invoke the maxim *ejusdem generis* in support of their position. This maxim, otherwise known as Lord Tenderden's rule, is one of numerous rules of construction. It does not apply where from the whole statute a larger intent may be gathered if the application of the rule will operate to defeat such larger intent. (*Gage* v. *Cameron,* 212 Ill. 146; *Webber* v. *City of Chicago,* 148 id. 313.) The provision of the act that all expenses of the liquidation shall be paid out of the assets of the estate must be taken as a clear expression of the whole intent concerning expense. Certainly there is no expression of an intention on the part of the legislature that the many hundred thousands of dollars necessary to supply legal services in such cases should be paid from the public treasury. Neither is there any provision in the act, nor elsewhere in the law, that the funds belonging to the creditors may be used to pay for services supplied by the Attorney General, as

intimated. Public officers are paid from public and not private funds. The effect of the omission of the word "counsel" from section 4 of our act is to leave that section without provision concerning legal services, and the question still remains whether the court under its chancery powers may authorize the employment of counsel to assist the liquidator because of the necessities of the situation. The appointment of Hennessy as counsel for the liquidator was by express order and direction of the court that the liquidator secure counsel, and if the court had power to so order, it is of no consequence that the act omitted such express authorization. That such legal services were vitally necessary is conceded. That compensation for such services comprises a very large part of the expense of liquidation is also admitted. Such services not being within the scope of the Attorney General's common law or statutory duties, who, then, is to perform them? Must the liquidator, who is not required by the act to be a lawyer and who as Director of Trade and Commerce is not altogether likely to be? The liquidator must close up the business and must use legal services in so doing. The necessities of the case demand it. The court has charge and supervision of the liquidation as a court of chancery. The act requires that all things necessary to the liquidation be done. Must it nevertheless be said that because legal services are not specifically enumerated in the act the court is powerless to meet the necessities of the situation? Such has never been the accepted view of the powers of a court of chancery. If, in furtherance of the jurisdiction of the court to direct and supervise the liquidation, it had power to do all things necessary to bring about that liquidation—and we hold that it did have that power—it had power to authorize the employment of counsel and to approve his claim for legal services. It being conceded that such claim is reasonable the court should have approved it.

The judgment of the Appellate Court and the decree of the superior court are reversed and the cause is remanded to the superior court for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE JONES, dissenting:

Whether the Attorney General is required to act in behalf of the liquidator of a defunct insurance company is a question vital to the decision in the instant case. Still, it is subordinate to the question of substantive law involved in the liquidation of insolvent insurance companies. The majority opinion of this court concedes that the business of insurance is so charged with public interest that it is a proper subject of statutory regulation, but it holds what I think no other court has ever held, certainly not within the present generation, that the liquidation of such a company is not a part of the business of insurance, and "is in reality the adjustment of the private rights of the company and parties dealing with it and so a private matter in which the State is not interested and for which public funds should not be expended." This declaration marks a retrogressive movement in administrative regulation of insurance business. It is a complete departure from the progressive legislation of the last quarter of a century relative to insurance business.

The history of the development of insurance regulations by the States is both interesting and instructive. The evolution of insurance law is quite similar in a number of States, including Illinois. The business of insurance has long been recognized as one affected with a public interest, and therefore a proper subject for the exercise of the police power of the State. There is no room to doubt the legislative power to enact laws concerning the right of persons or corporations to engage in the business of insurance; to provide rules for the organization and incorporation of

companies; to define, within reasonable limits, the methods by which the business may be conducted; to impose license fees; to regulate insurance agents and brokers; to prescribe a standard form of policy; to prevent discrimination in rates; to regulate foreign corporations; to require the making and publication of reports; to authorize retaliatory measures; to revoke charters; to voluntarily or involuntarily liquidate the business, and, finally, to dissolve the corporation itself. The whole field of insurance business being so indelibly impressed with a public interest is subjected to reasonable regulations under the police powers of the State.

The first regulatory laws of a comprehensive nature enacted by the General Assembly in Illinois placed the chief supervisory authority in the Auditor of Public Accounts. Some statutory duties were also imposed upon the Attorney General. The legislature in 1893 created the office of insurance superintendent and divested the Auditor of all of his powers and duties relative to insurance regulation and supervision. The legislature had an undoubted right to create a separate department of insurance. Prior to 1925 the method of liquidating and dissolving an insolvent insurance company was prescribed by sections 5 and 6 of an act in regard to the dissolution of insurance companies, approved February 17, 1874. This method required the appointment of a receiver by a court of equity upon the application of the insurance superintendent, stockholder or creditor. The receiver had full power to collect and distribute the assets of the company and his compensation was fixed by the court. The receiver was in every sense an officer of the court.

The policy of the law in reference to liquidation and dissolution of delinquent companies was radically changed by the act of 1925, and the administration of the affairs of defunct and delinquent companies became vested in an executive officer of the State rather than in a receiver ap-

pointed by the court. The duties which theretofore devolved upon a receiver in collecting and disbursing the assets of a defunct company were imposed upon an official of the executive department, subject, however, to a limited supervision by a court of equity. The director of the Department of Trade and Commerce became liquidator of all insolvent companies. His power and authority arose out of the statute and not by virtue of an appointment of the court. The court cannot remove him or control his acts contrary to the statute. Section 2 of the Liquidation act gives the court no right to appoint a receiver but compels it to recognize and accept the director of the Department of Trade and Commerce as the official liquidator. He is entitled to no compensation but is required to perform his duties *cum onere*.

Illinois was not the first among the States to take the liquidation of delinquent and insolvent insurance companies from the jurisdiction of a court of equity and make of it an administrative function. In the year 1909 Governor Charles Evans Hughes, of the State of New York, who prior to his election as Governor had been chief counsel of a legislative committee appointed to investigate the conduct of certain large insurance companies doing business in that State, and being thoroughly familiar with many of the evils surrounding the business of such companies, sent a message, while Governor, to the General Assembly, in which he said: "Serious delays and enormous wastes connected with receiverships both of banking and insurance corporations has directed attention to the advisability of providing suitable means for economical and speedy liquidation through the agency of the respective State departments. Last year the Banking law was amended so that it provided for the liquidation of banking corporations by a business-like method, and the wisdom of the provision has already been demonstrated by experience. Similar exigencies arise in connection with insurance corporations and

should be dealt with in a similar way." Responsive to the Governor's message the General Assembly enacted a law (Insurance law, sec. 63, subdiv. 3, Consol. Laws, chap. 28,) by which the power to wind up the affairs of an insolvent insurance company was taken away from the courts and made an administrative or departmental function to be exercised by the superintendent of insurance. It was enacted that "such liquidation shall be made by and under the direction of such superintendent and his successors in office, who may deal with the property and business of such corporation in their own names as superintendents or in the name of the corporation, as the court may direct." A suit involving the liquidation of an insolvent insurance company under that act was before the New York Court of Appeals in *In re Casualty Co. of America,* (Rubin claim,) 244 N. Y. 443, and Mr. Justice Cardozo, then chief justice of that court, said: "The liquidation of insurance companies in this State is governed by a statute adopted, in its main features, in 1909. The system of liquidation by receivers specially appointed had proved to be dilatory and wasteful. The legislature substituted administration by a department of government. Upon the application of the superintendent of insurance an order may be made * * * for the liquidation of the business. The work is to be done by the superintendent and his deputy but under the supervision of the court and subject to its direction." Illinois, with similar experiences as to liquidations by receivers, virtually re-enacted the statute of New York. Section 8 of our act of 1925 is almost a repetition of section 63, subdivision 6, of the New York act. The only noticeable difference is that in New York the liquidator is authorized to incur expenses for attorneys' fees, while in Illinois the statute contains no such provision.

Under the Illinois law of 1925 liquidation of an insolvent insurance company is a departmental act. The Director of Trade and Commerce, as liquidator, functions as

an executive or administrative officer and not as a judicial officer, although certain of his acts are subject to the approval of a court of equity. The interest of the public in the liquidation of an insurance company is the general interest the public has in the management and control of insurance business. I am unable to perceive the division line which the majority of this court attempts to point out in defining when insurance business is impressed with a public interest and when it is not. It is conceded that when an insurance company has become insolvent the public interest requires the services of the Attorney General to file a petition for liquidation in a court of equity and that when the liquidation is complete he must file a bill for the dissolution of the corporation, but it is held that the public interest in the liquidation ceases when the liquidator is directed to take charge of the property and begins again when proceedings are started to dissolve the corporation. It seems to me that if the public interest demands the institution of proceedings for liquidation it should have no less interest in the administration of the liquidation, which is the vital and substantial object of the proceedings. The interest of the State in collecting, possessing, controlling and distributing the assets of an insolvent insurance company is of the same character as other matters pertaining to the business of insurance. That interest cannot be segregated from the public's general interest in the business. It is direct and continues throughout the period of liquidation.

The opinion of the majority of this court declares the business of liquidating a defunct insurance company is not impressed with a public interest because the State has no direct, substantial and monetary interest in the subject matter as distinguished from a purely nominal interest. A number of cases are cited in support of this contention. Among them are *People* v. *Continental Beneficial Ass'n,* 280 Ill. 113, *Hodge* v. *People,* 96 id. 423, *Hitchcock* v. *Greene,* 252 id. 519, and *People* v. *Mitchell,* 317 id. 439.

These cases do not have the slightest relationship to this question. They deal exclusively with the construction of section 118 of the Practice act, concerning direct appeals to the Supreme Court when the State is interested as a party or otherwise.

. The majority opinion says that "the State has no more interest in collecting the assets of an insurance company and distributing them to its creditors than it has in settling any other private controversy." No reported case and no text book is cited in support of this holding, and, indeed, I think none can be found to support the doctrine that the liquidation of an insolvent insurance company is not impressed with a public interest and cannot be made the subject of legislative regulation and control. The old theory of exclusive judicial control has been abandoned because of its inherent vices. A new and more enlightened method of departmental control has been substituted in its place. Lord Chief Justice Hale said that "when private property is affected with a public interest it ceases to be *juris privati* only, and it becomes clothed with public interest when used in a manner to make it a public consequence and affect the community at large." *Munn* v. *Illinois,* 94 U. S. 113.

Public regulations of the insurance business exhibit it to be the conception of the law-making bodies of the country, without exception, that the business of insurance so far affects the public welfare as to invoke and require governmental regulation. A conception so general cannot be without cause. The universal sense of a people cannot be accidental. (*German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389.) Because of the public interest the liquidation of insolvent insurance companies and of insolvent banks, when carried on under express statutory provisions, has been declared to be an administrative act, with only the power of limited supervision by the courts. In *Greenfield Savings Bank* v. *Commonwealth,* 211 Mass. 207, the Supreme Judicial Court of Massachusetts held: "The commissioner is

an executive or administrative officer. He exercises visitorial powers, is charged with the duties of rigid inspection, and, when circumstances exist, * * * may take and retain possession of the property and business of the bank for the purpose of liquidation of its affairs in accordance with the statute. He acts in all these particulars as a public officer and not as a receiver appointed by the court. While he possesses some powers commonly conferred upon a receiver and in many respects is subject to the directions of the court, he nevertheless carries out directly, and in his own official capacity, a legislative policy. His chart is the legislative mandate as declared by the statute."

Section 4 of the Illinois act expressly provides that the liquidation shall be made by and under the direction of such director, who shall be vested, by operation of law, with title to all of the property, contracts and rights of action of such company. The title to the property and the authority to dispose of it in liquidation and settlement of all claims are vested in him by the statute and not by a judicial decree. The majority opinion in this case virtually nullifies the statute and destroys the line of demarcation between departmental liquidation and judicial liquidation of insurance companies, which to my mind is a result vastly more serious in its consequences than the payment of counsel fees out of the State treasury. I am unable to discern a semblance of excuse for the appointment of a liquidator under the statute except to wind up the affairs of an insolvent company. The doctrine upon which our legislation is predicated has only one basis, and that is the protection of policyholders and creditors. It constitutes the very substance of the public interest and attaches itself when the relationship of policyholder arises. It ceases only when settlement is made, either according to the terms of the policy or by liquidation of the claim against the insolvent company. It is therefore obviously illogical to say that "the State has no more interest in collecting the assets of an insurance company and dis-

tributing them to its creditors than it has in settling any other private controversy." Furthermore, by what authority can the judicial department compel the Director of Trade and Commerce, an officer of the executive branch of the government, to perform a duty of a judicial officer, such as is required of a court receiver? It is an unwarranted invasion of one branch of government by another. If the Director of Trade and Commerce is permitted to wind up the affairs of an insolvent insurance company in the manner directed by the statute there is no infringement by one branch of government upon another.

The case *In re Casualty Co. of America*, (Rubin claim,) *supra*, is cited in the majority opinion as being persuasive upon the question of whether or not the actual liquidation is an administrative function or a judicial function. According to my view the case affords no support for the contention that it is not a purely administrative function. It clearly announces that the liquidation of insurance companies is no longer a judicial function in the State of New York but has become an administrative activity through legislative enactment. So far as the question of the allowance of attorney's fees is concerned, all that case decides is that the liquidator is not a final arbiter of the amount to be allowed for such services, but that his action in fixing the amount of fees and charges of administration, including solicitor's fees, is reviewable by a court. I submit that the question of whether liquidation is a judicial or an administrative function cannot be determined from the purse out of which lawyer's fees are to be paid.

The State of Missouri by its insurance code provided a method for the liquidation of insolvent insurance companies. The departmental officer charged with the duty of liquidation is the superintendent of insurance. A petition was filed in the circuit court of the city of St. Louis by one Duggan against the Missouri State Life Insurance

Company and others, alleging that the company was mismanaged, fraudulently conducted and insolvent. The court entered an order appointing receivers. Thereafter the insurance company filed an original petition in prohibition in the Supreme Court of Missouri against the judge who had entered the order and the receivers appointed by him, on the ground that the liquidation of insurance companies is an administrative act and that the court exceeded its jurisdiction in the appointment of the receivers. That case brought up the precise question whether or not, under a statute like ours, liquidation of an insurance company is judicial or administrative. The opinion of the Supreme Court of Missouri in *Missouri State Life Ins. Co.* v. *Hall,* 52 S. W. (2d) 174, held: "The legislative power to authorize, supervise, regulate and liquidate insurance companies rests on the interests of the public in the insurance business. * * * The State may through legislative officers supervise and regulate insurance companies in aid of solvency. If so, it has the power to protect those interested, in the event of insolvency. It is a valid exercise of the police power through administrative officers. * * * The original code, and amendments thereto, indicate an intention to regulate the business from beginning to end." So in Illinois, as well as in Massachusetts, New York and Missouri, the intention to include liquidation of insolvent insurance companies within the dominion of administrative control is apparent from the context of the legislative enactments. The correct conclusion seems to be that liquidating an insolvent insurance company is an inseparable part of the general subject matter of insurance, and the interest of the public is not to be determined by any distinction between a going concern and an insolvent one.

There may be some reasonable ground for holding that the insolvent's estate should be compelled to pay the fees of the attorney for the liquidator, but none appears upon the

theory that the director of the Department of Trade and Commerce, as liquidator, is acting as a judicial officer and not as an administrative officer. Therefore I cannot concur in the majority opinion of the court.