(No. 25951.—

The People of the State of Illinois, Defendant in Error, *vs.* Albert Ulrich *et al.* Plaintiffs in Error.

*Opinion filed April 10, 1941—Rehearing denied June 4, 1941.*

Farthing, J., took no part.

F. E. Merrills, and Beasley & Zulley, for plaintiffs in error.

George F. Barrett, Attorney General, Louis P. Zerweck, State's Attorney, and Harry L. Arnold, for the People.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

Plaintiffs in error were convicted in the circuit court of St. Clair county on the charge of falsifying certain records belonging to the supervisor of the town of Centreville, under section 176 of division 1 of the Criminal Code. (Ill. Rev. Stat. 1939, chap. 38, par. 401.) They were sentenced to the penitentiary for not less than one and not more than seven years. The cause is here upon writ of error.

The defendant Albert Ulrich was supervisor and overseer of the poor of the town of Centreville in said county. Louise Ulrich Reiff, his sister, was an employee of the relief office. Josephine Ulrich, another sister, was employed in a restaurant, and was never on relief. The indictment arose out of an alleged falsification of a disbursing order issued to Dr. Irene Waters, claimed to be for dental work rendered Henry Nunn, and for entering the same upon a relief card carrying the account of Henry Nunn with the relief office.

It is claimed that Josephine Ulrich had some dental work done by Dr. Waters and suggested to the latter that it could be handled as a relief item, and that she presented to the doctor a claim sheet to be signed by the doctor and presented for payment from the relief fund; that Albert Ulrich, Louise Ulrich Reiff and Josephine Ulrich conferred together, and, as a result, Louise Ulrich Reiff prepared a disbursing order authorizing Dr. Waters to do the dental work to the extent of $50 for Henry Nunn, who was on relief, and later signed Henry Nunn's acknowledgment that he had received the service, and thereupon a check for $50 was sent to Dr. Waters, which, in fact, paid the dental bill of Josephine Ulrich. Every step in the proof offered to establish this scheme is denied by the defendants, and, in addition, facts were proved which it is claimed raise an inference that the fraud, if any, was committed by other persons.

Plaintiffs in error contend the court erred in denying their motion to quash the indictment. The section of the statute under which they were convicted reads: "If any judge, justice of the peace, sheriff, coroner, clerk, recorder, or other public officer, or any person whatsoever * * * shall alter, deface or falsify any minute, document, book or any proceeding whatever, of or belonging to any public office within this State, the person so offending shall be imprisoned," etc. The first count alleged the falsification of a certain record called a "disbursing order" by causing to be written on said "order the words 'Henry Nunn' in the space provided for the signature of the beneficiary of said order * * * which said disbursing order purported to be an order for the payment to Dr. Irene Waters of the sum of fifty dollars ($50) for dental services rendered to Henry Nunn, * * * but which said disbursing order was in fact an order for the payment of $50 to said Dr. Irene Waters for dental services rendered Josephine Ulrich, * * * knowing that the said disbursing order * * * then and there belonged to the office of the supervisor of the said town of Centreville." The other counts are similar except charging falsification of different records. The claim that defendants must be officials to come within the statute is without merit, as the statute is not confined to public officials, but to the "officials" or "any person." The use of the words "or any person whatsoever," following designated officers, indicates that the offense is not confined to public officials. The principle of *ejusdem generis* is not applied when it would defeat the larger intent of the statute. *People* v. *Marquette Nat. Fire Ins. Co.* 351 Ill. 516.

The argument that it was necessary to allege the particular papers falsified were public records is without merit, as the statute requires only that they belong to "any public office within this State," which is clearly comprehended within the allegation of the indictment "which said disbursing order then and there belonged to the office of the

supervisor of said town of Centreville." We think the indictment was sufficient.

To sustain the proof under the first count the People offered in evidence an exhibit, which, after the elimination of printed directions, reads as follows:

"No. 17439

"CASH WILL NOT BE GIVEN IN LIEU OF MERCHANDISE

| St. Clair County | 6/8/37 | Albert Ulrich, |
| | | Township Supervisor |

To Irene Waters
        Deliver to Nunn, Henry
                ($50.00) Fifty and no/100 Dollars

The following described articles at a cost not to exceed the above amount—any necessary allowance for retailer's occupational tax has been included.

| Quantity | Article and Description | Unit Price | Amt. |
| | Dental work | | $50 |

Centreville Township
Albert Ulrich, (L.U.)
        Authorized Representative.

    I hereby certify that I have received goods in the amount listed above.            Henry Nunn, Beneficiary.  Pd. 6/14/37, J.U."

The second count of the indictment refers to an entry made upon the relief card of the individual poor person, which charges his account with the services mentioned in the disbursing order referred to in count one. The third count is a general one referring to both transactions. It is necessary to understand the relation of these different papers alleged in the indictment to have been falsified. Before relief money is paid out, a claim sheet by the person furnishing the goods or services must be signed. Then there is next executed a paper called a disbursing order of the kind set out above, which authorizes the person furnishing the goods or service to do the work to the extent of the amount specified in the order, and, when received, the beneficiary acknowledges it by signing his name. This authorization, at time of issuance, is transferred to a card, which shows the complete amount of relief charged to the poor

person. The person furnishing the goods or service is paid by a check. The disbursing order, therefore, in this particular case authorized Irene Waters to do $50 worth of dental work for Henry Nunn, and upon his signing a receipt that he had obtained such service the check would issue in payment of the same. It appears, therefore, that the relief card mentioned in count 2 is only falsified if there had not been issued a disbursing order specifying $50 to be expended for dental services. Therefore, so far as the second count is concerned, it is necessary to ascertain the facts with respect to the disbursing order; as far as Josephine Ulrich is concerned, having no connection whatever with the office of the supervisor, her alleged procuring of relief from the dentist cannot amount to the crime of falsifying township records, unless she is connected with the falsifying of the disbursing order.

The whole case turns around the proof connecting the defendants with the falsifying of the disbursing order. Ulrich was the supervisor, and admittedly did not prepare the papers necessary for relief to the poor. One Tillie Toth was the relief administrator appointed by Ulrich. Louise Ulrich Reiff worked in the relief office. Josephine Ulrich worked in a restaurant. The duty of Louise Ulrich Reiff was to fill out the relief cards, which was done with pen and ink. Disbursing orders were made out in triplicate on a typewriter. Louise Ulrich Reiff did not operate a typewriter. She testifies she had authority to authorize disbursing orders to the extent of $2 or $3 and no more, which is not disputed; that any amount above this sum was referred to Tillie Toth, who would do the authorizing and direct it typewritten and passed for signing. Louise Ulrich Reiff denies that she wrote the disbursing order, or the name Henry Nunn upon the disbursing order where he acknowledged the receipt of the dental service. Five witnesses testify *it is not* her signature. Tillie Toth testified *it was* her signature. Tillie Toth *was not* a disinterested

witness. She says she had something against Albert Ulrich and Louise. She testified that she had had words with Ulrich, and that two days before she left she requested the other employees to get information about any matter of any irregularities they knew about. There is also testimony that, in several instances, she signed the names of relief clients to disbursing orders, acknowledging receipt of the goods or service. At the time she left the office she took therefrom her own mother's relief card, and, at the time of the trial, there was a *mandamus* suit against her to require its return. It is quite evident she bore a strong feeling of animosity against Ulrich and Louise.

There is no evidence except that of Tillie Toth that the disbursing order was made out by the defendants. The only thing in the record connecting Josephine with the alleged falsifying of township records is Tillie Toth's statement that some time in 1937 she walked to the desk of Louise Ulrich Reiff and heard Albert Ulrich and Josephine Ulrich and Louise Ulrich Reiff engaged in a conversation to the effect that Josephine was to see if Dr. Waters would receive a relief check and let them know, and the further conversation that Ulrich, himself, had talked to Tillie about it. This conversation is supposed to have taken place openly in the supervisor's office, and is denied, in every respect, by each of the defendants. It is also inconsistent with her demand that search be made for irregularities. We thus have the question of the falsifying of the disbursing order, and who falsified it, coming directly down to, and being almost wholly dependent upon, the testimony of Tillie Toth. If her testimony is disbelieved, proof of count one fails, and there can be no conviction under count 2 unless Louise Ulrich Reiff falsified a disbursing order before transferring to the relief card. Josephine Ulrich cannot be guilty of the charge of falsifying unless she aided and abetted her brother and sister in changing the records in the supervisor's office.

The testimony on the transaction between Josephine Ulrich and Dr. Waters was offered for the purpose of showing her participation in the falsification of the disbursing order and relief card. There are some unusual features in connection with the Waters transaction. The claim sheet dated June 12, 1937, signed by Dr. Waters, shows a demand for $50 for services rendered to an unnamed person and not identified by a relief card number. It recites there is an itemized statement annexed which is just and true. She received a check for $50 dated June 14 which is marked paid on June 16. On July 3, she wrote a letter to the supervisor, (defendant Albert Ulrich,) saying in effect that she had done $50 worth of dental work in June, for which she had sent a statement and received a check, but had not received the proper duplicate order, but the duplicate order she had received was for a person for whom she had not done work, and that she thought there was a mistake, and sent back her personal check, and requested a new check. This personal check she mailed was never cashed. Albert Ulrich claims it was handed to Tillie Toth, who kept the bank books, and the latter denies this took place. The record does not disclose whether Dr. Waters had ever checked her own bank account or not, or had made any complaint that the check had not gone through, or had made another demand for a new check from the supervisor.

It is apparent that Dr. Waters knew the procedure of the relief office. She testifies the claim sheet was given her by Josephine. This is denied. The statement she mentions in her letter and in the claim sheet does not appear in evidence. The letter says it was for work done in June. She did no dental work for Josephine in June. For whom such services were rendered does not appear in her testimony. She claims Josephine Ulrich owed her a bill of $50 but, on cross-examination, she does not show items to exceed $20. The check for $50 sent to her was, in fact, executed by Tillie Toth. The absence of proof that the claim sheet was

for work done for Josephine, and a like absence of such a claim in the letter of Dr. Waters, together with the obvious opportunity of others to have been concerned in the matter, raise inferences inconsistent with the guilt of the defendants.

When we consider that each of the three defendants has proved an excellent reputation as a law-abiding citizen, and has denied *in toto* the charge made, together with the extremely ambiguous conduct upon the part of the principal witness, we are not convinced the charge has been proved beyond a reasonable doubt. We are fortified in this conclusion by other things occurring during the trial. During the recess of the trial, photographers, over the objection of defendants, took flashlight pictures of the defendants and the members of the jury, who were sitting in the court room waiting to be called, and defendants made a motion for a continuance based upon such fact. Photographs were taken every day, and, during one day of the trial, the jury, at the request of the photographers, arranged themselves in a special position, so their pictures might be taken, and which were actually published in a St. Louis daily paper.

It is claimed there is a rule of court in force forbidding the taking of photographs in a court room at any time when there are present court officials, parties, counsel, jurymen, or others connected with the pending proceeding. Whether or not there is such a rule, it is not conducive to the orderly administration of justice to have defendants singled out for flashlight newspaper pictures, or for jurymen to be so photographed before the trial is concluded. In *People* v. *Munday,* 280 Ill. 32, where no objection was made to the taking of photographs and pictures in the court room the court, in commenting upon the procedure, said: "The trial of a case should consist only of a sober investigation of the matters in issue. It is not to be regarded as an entertainment, or in any sense a festive occasion. The court should not permit the conversion of the court room into a picture gallery, or the case into a show."

If there were a rule, as has been stated, it was the duty of the court to enforce it. (*Lancaster* v. *Waukegan and Southwestern Railway Co.* 132 Ill. 492.) But regardless of a rule of court, we can see where grave injury might result to the defendants in a criminal case by undue importance given to the cause by the constant taking of photographs of the defendants, court officials or counsel, in a place reserved exclusively for the administration of justice. It has even been held that taking pictures in a court room, without flashlight disturbance, and causing them to be published in newspapers, contrary to the orders of the court, constituted a contempt. *Ex parte Sturm,* 136 Atl. (Md.) 312, 51 A. L. R. 356.

It also appears that during the closing argument of the cause the assistant Attorney General made the following remarks: "They are stealing from the poor of Centreville township, and this $50 which they stole would have bought a lot of milk for the poor families of that township," and again, "They are stealing from the poor from one end of the State to the other, and the Lord knows that the poor are not getting enough as it is, and I for one would be willing to give them still more." Timely objections were made to these remarks. They were improper. There are no charges of larceny pending. They appealed to the passions of the jury and had no relation to or bearing upon the case whatever. (*People* v. *Schneider,* 360 Ill. 43; *People* v. *Bimbo,* 314 id. 449.) Considering the state of the evidence and the conduct of the trial, we are of the opinion that the judgment of conviction must be reversed and the cause remanded.

The judgment of the circuit court of St. Clair county is, accordingly, reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE FARTHING took no part in this decision.