JOHN HANSEL, Plaintiff-Appellant, *v.* CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellees.

(No. 53550;

First District—April 1, 1971.

*Rehearing denied May 28, 1971.*

Fitzpatrick & Kaye, of Chicago, (Peter Fitzpatrick and George Kaye, of counsel,) for appellant.

George J. Schaller, O. R. Hamlink, and Jerome F. Dixon, of Chicago, for appellees.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

Plaintiff sued for personal injuries alleged to have been sustained immediately after alighting from a bus on which he had been a passenger. The jury returned a general verdict for defendant and answered two interrogatories—one finding the bus driver not guilty of negligence which proximately caused plaintiff's injuries, and the other finding that plaintiff was not in the exercise of due care. The court denied plaintiff's motion for a new trial and entered judgment on the verdict, from which plaintiff has appealed. Plaintiff contends (1) that he was denied a fair trial by reason of the improper conduct of defendant's attorney, (2) that the special interrogatories were improperly worded, (3) that hearsay evidence was improperly admitted, (4) that the verdict was against the manifest weight of the evidence, and (5) that the court erred in dismissing with prejudice plaintiff's suit against the bus driver who had been joined as a defendant. A brief summary of the evidence follows.

On Wednesday, January 24, 1962, plaintiff left his employment at 401 North Wabash Avenue in the city of Chicago at approximately 3:10 P.M. Since it was payday, he walked to a nearby bank to cash his check and then began his trip home via C.T.A. bus routes. He rode three buses to arrive at the intersection of 80th Street and Kedzie Avenue at approximately 6:30 P.M. He testified that several long bus delays were responsible for the lateness of his arrival. He alighted through the rear exit door and noticed there was only 18 to 30 inches between the side of the bus and the curb which was covered with 30 inches or more of snow. He had started walking alongside the bus toward the front of it when it began to pull out. The side of the bus brushed his left shoulder, knocking him against the snowbank. His right leg slipped under the wheel of the bus and he was severely injured as the bus proceeded into the intersection. The only other eyewitness to the occurrence was one Moe Liss, a passenger was was behind plaintiff when the latter was going through the rear door. Liss testified that the snowbank along the curb was approximately three feet deep and that the space between the side of the bus and the curb was about 18 inches. He walked behind plaintiff alongside the bus. As the bus pulled out of the stop, "it careened because there was ice on the ground," and brushed both the plaintiff and the witness. Plaintiff lost his balance and "wound up under the rear wheel of the bus."

The bus driver testified that plaintiff was intoxicated at the time of the accident and that he became aware of plaintiff's condition at the 63rd Street terminal when he saw him board the bus; that he saw plaintiff bump into a post at the terminal and that when he attempted to board the bus, he missed the front door and almost fell to the pavement in front of the bus; that once on the bus, plaintiff stumbled toward the witness, almost fell on the fare box and dropped his transfer into the witness's hand and that as he walked to the rear, he stumbled and fell on several people seated in the long seat on the right side. Two passengers testified that plaintiff appeared to be intoxicated when he got on the bus.

The driver testified that at the intersection of 80th Street and Kedzie Avenue he stopped the bus 30 or 40 feet into the intersection in order to position the rear exit door on dry pavement south of the north curb of 80th Street; that the bus was at least four to five feet from any snow and that he waited at the bus stop until he saw the legs of those who had exited disappear in his rear view mirror. The foregoing is in substance the pertinent testimony on the issues here involved.

■■ We proceed to a consideration of plaintiff's first point, that the

improper conduct of defense counsel denied him a fair trial. In closing argument the defendant's attorney, over plaintiff's objection, argued to the jury as follows:

"And perhaps—maybe you think I'm a little bit too much concerned with the employees. I'll tell you this, folks; there have been times I've spoken with people like yourselves, where our bus operators or an employee was negligent and I told him to give money damages, but when I find one of my men  *  *  *  ."

In *Panelle v. C.T.A.*, 31 Ill.2d 560, 202 N.E.2d 484, a similar closing argument was considered by the court. There the defendant's attorney argued to the jury that if the defendant were required to pay every claim, then "there isn't enough money collected in a year that we would have to pay out in claims in a month." The Supreme Court upheld the action of the trial court in granting a new trial, stating that nothing in the evidence called for a discussion of other claims and that counsel's remarks gave risk to inferences beyond the merits of the plaintiff's claim. The same rationale is applicable to the instant case. It was error for defense counsel to tell the jury what he had done in other cases having no relation or pertinence to the instant case.

■■■  In emphasizing the importance of the evidence pertaining to plaintiff's intoxication at the time of the accident, defense counsel said to the jury in closing argument:

"And I think you will agree with me that if a person is under the influence of liquor, he does not have the capacity or capabilities of exercising ordinary care."

Voluntary intoxication is not, *per se,* the equivalent of contributory negligence. Even where the evidence is overwhelming that the plaintiff was drunk at the time of the accident, such evidence does not establish contributory negligence as a matter of law. Being "under the influence of liquor" is merely a factor to be considered by the jury on the ultimate question of causation and it was error for defense counsel to suggest otherwise.

On this same theme defense counsel then stated:

"Counsel asked you to give him $62,000 and in the same breath he is asking you to put a premium on a man who gets drunk and intoxicated and he asked you now to reward him."

The question before the jury in the instant case was whether a preponderance of the evidence established that plaintiff was intoxicated at the time of the accident and whether such intoxication proximately caused his injuries. Their determination of these factual issues should not in any way have been related to whether a verdict for plaintiff would place a "premium" on drunkenness or constitute a "reward" for getting

drunk. The province of the jury is the resolution of factual issues in the narrow context of the case before them, not the rendering of moral or social judgments in verdict form. The purpose of argument by counsel is to assist the jury fairly, deliberately and impartially to arrive at the truth of the facts submitted to them for their decision. (*People v. Bimbo,* 314 Ill. 449, 145 N.E. 651.) It is error for counsel to indulge in assertions which appeal to the passions of the jury and have no bearing or relation to the case whatsoever. (*People v. Ulrich,* 376 Ill. 461, 34 N.E.2d 393.) It is our conclusion that the closing argument of the defense attorney substantially exceeded the bounds of proper debate and prevented plaintiff from receiving a fair trial.

We proceed to consideration of plaintiff's contention that the special interrogatories were worded in a manner prejudicial to him. They read as follows:

"Was the bus operator at the time and place in question guilty of negligence that proximately caused injury to the plaintiff?

Was the plaintiff at the time and place in question in the exercise of ordinary care for his own safety?"

The jury returned negative answers to both interrogatories. Plaintiff argues that it was improper to include the requirement of proximate cause in the interrogatory as to the bus driver's negligence and then to exclude it from the interrogatory relating to plaintiff's lack of ordinary care.

■■ In the recent case of *Bruske v. Arnold,* 44 Ill.2d 132, 254 N.E.2d 453, it was held error for the trial court to submit the following interrogatory to the jury: "Was the plaintiff, Edward Bruske, in the exercise of ordinary care for his own safety before and at the time of the occurrence?" The court found that failure to include in that interrogatory the additional element of whether the plaintiff's negligence proximately contributed to his injuries rendered the interrogatory defective. In that case however the court concluded that the error was harmless because adequate instructions on contributory negligence and proximate cause had been given and there was little indication that the jury was confused to the detriment of the plaintiff. In the instant case while adequate instructions on proximate cause and contributory negligence were given, the jury may well have been confused to the detriment of plaintiff by the difference in the respective interrogatories. This was especially prejudicial because of the misleading statements on intoxication made by defense counsel in his closing argument, as set forth in our discussion of plaintiff's first contention. Under such circumstances it was reversible error to submit the interrogatory in question to the jury without including the element of proximate cause.

Plaintiff next contends that the trial court erred in admitting the testimony of the bus driver as to certain hearsay statements made by plaintiff's wife when she arrived at the scene of the accident. She testified that she lived at 8001 South Kedzie Avenue, across the street from the site of the accident. A short time after the accident occurred she heard a neighbor shout to her son, "Pete, it's your dad." The bus driver testified that as Mrs. Hansel came running toward her husband, she said, "I knew this was going to happen, I knew this was going to happen, I knew this was going to happen."

■■■ Hearsay evidence is defined as testimony in court of a statement made out of court, such statement being offered as an assertion to show the truth of the matter therein asserted, thus resting for its value on the credibility of the out-of-court asserter. (*People v. Carpenter*, 28 Ill.2d 116, 190 N.E.2d 738; McCormick, Law of Evidence § 225 (1954).) In the case before us out-of-court statements attributed to plaintiff's wife were offered by defendant to show that she actually knew or thought she knew the accident would occur and that this might be attributed to intoxication. Aside from the speculative nature of this use of her testimony, Mrs. Hansel's remarks come within the express provision of the rule against hearsay hereinbefore set forth. Indeed, the defendant does not contend otherwise. The argument on this point in defendant's brief is confined to the question of whether or not plaintiff preserved this trial error for review. However since the judgment must be reversed on other grounds and the cause remanded, we have stated our conclusions on that phase of the case.

We find no merit in plaintiff's suggestion (4) that the court should have set aside the verdict and the answers to the special interrogatories on the ground that they were against the manifest weight of the evidence.

■■■ Lastly plaintiff contends that the trial court erred in dismissing with prejudice his suit against the bus driver. Plaintiff fears that as a result of that dismissal, the court on remandment might direct a verdict for the C.T.A. on the ground that a principal is not liable if his agent is not, and he argues therefore he should have been granted a voluntary nonsuit as to the bus driver. The order of dismissal was based on plaintiff's failure to exercise reasonable diligence in obtaining service of process. The complaint charging both the C.T.A. and the bus driver with negligence was filed in December 1962. The return of the Sheriff on the reverse side of the summons issued when the complaint was filed showed service on the C.T.A., but stated that the driver of the bus was not found. No further attempt was made to serve him and when the case came up for trial in January 1968, more than five years later, the

trial court properly entered the order of dismissal with prejudice. Supreme Court Rule 103(b) (effective January 1, 1967) provides as follows:

"If the plaintiff fails to show reasonable diligence to obtain service, the action as a whole or as to any unserved defendant may be dismissed with or without prejudice on the application of any defendant or on the court's own motion."

The rule is intended to prevent the practice of filing a suit in order to toll the applicable statute of limitations and then delaying the service of process for an unreasonably long period of time. (*People ex rel. Powell v. Luttrell* (1970), 130 Ill.App.2d 241, 264 N.E.2d 737.) The statute of limitations applicable to the instant case provides that suit must be commenced within two years after the cause of action accrues. (Ill. Rev. Stat. 1967, ch. 83, par. 15.) Considering the lapse of more than five years in service of process on the driver, the trial court did not abuse its discretion in ordering the dismissal with prejudice of plaintiff's action as to him. Dismissal was for failure to comply with the rules of the court and does not affect plaintiff's right of action against the C.T.A.

For the reasons hereinbefore set forth the judgment is reversed and the cause is remanded for new trial and for such other proceedings as are consistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

McNAMARA, P. J., and DEMPSEY, J., concur.