(No. 46700.-

CHARLES GILBERT DIXON, Appellant, v. THE INDUS-TRIAL COMMISSION *et al.*—(Bobbie Frakes, Appellee.)

*Opinion filed Jan. 30, 1975.—Rehearing denied March 24, 1975.*

Kritzer, Stansell & Critser, of Monmouth (Richard L. Whitman, of counsel), for appellant.

William J. Harte, Ltd., and James V. Tufano, both of Chicago, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

This direct appeal under our Rule 302(a) (Ill. Rev. Stat. 1969, ch. 110A, par. 302) is from a judgment of the

circuit court of McDonough County, which affirmed a decision of the Industrial Commission holding that the claimant, Bobbie Frakes, had established his claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.8(a)(f)).

Bobbie Frakes was employed in Macomb by the respondent, Charles Dixon, who owns the Junction Service Station. He worked as a station attendant, and his duties included pumping gas, changing tires and doing minor repair work. On June 5, 1970, he bumped the crown of his head on a steel girder in the station as he was changing a tire on a truck. He suffered immediate and severe pain but managed to finish changing the tire, and he did complete his shift. The next day he experienced blurred vision, an upset stomach and difficulty in speaking. Two days later, he consulted Dr. Trummel in Macomb, who referred him to Dr. Weston, an ophthalmologist. The claimant was admitted to the McDonough District Hospital in Macomb where X rays were taken and tests made.

When in the hospital the blurring of his vision became more severe and he experienced extreme dizziness. He also suffered pains in the back of his neck and had difficulty when he attempted to walk. He spent three days in McDonough Hospital and one week later was admitted at Hines Veterans Hospital, where he came under the care of Dr. Frank Rubino and Dr. A. Papas. The claimant had the same symptoms at Hines, and after 36 days of observation, tests and treatment he was released. He has not been able to do any type of work since his accident.

At the hearing before the arbitrator, the claimant testified that prior to June 5, 1970, he had enjoyed good health. However, since the accident, he said, he suffers from dizziness, excessive fatigue, occasional nausea and blurred vision. He also has pains in his neck and has difficulty in controlling bowel movements. His memory, he testified, has deteriorated since the accident.

An evidence deposition which had been taken from

Dr. Frank Rubino, who is chief of neurology at Hines Veterans Hospital, was admitted into evidence in behalf of the claimant. According to it, Dr. Rubino, in association with Dr. Papas, began treating the claimant on July 1, 1970. Dr. Rubino said that the most likely diagnosis was that the claimant had multiple sclerosis. He based this diagnosis on his examination, which revealed that Frakes suffered from double vision and an imbalanced equilibrium. There was other objective evidence to support his diagnosis, he said, such as weakness of the eye muscles, nystagmic movement of the eyes, and the fact that the claimant had to wear an eye patch to overcome the double vision and be able to see but one object. He testified also that the claimant's difficulties in walking could have been caused by cerebellar problems. The cerebellar signs which lead to this conclusion, he said, were the claimant's unsteady gait, his inability to do tandem walking and the unsteadiness of his knees. In response to a hypothetical question, Dr. Rubino said that there may be a causal relationship between the head injury and the precipitation of the multiple sclerosis, and went on to say that there have been reported cases in which patients have developed multiple sclerosis after a head injury. When he last examined the claimant on March 1, 1971, the claimant was, he said, excessively fatigued and depressed, and his vision was blurred, but he did not have double vision. He said the claimant was not able to do gainful work at that time, and he said that claimant's condition could be permanent.

Dr. Bruce Ehmke, a specialist in neurology, testified in behalf of the respondent. He examined Bobbie Frakes on October 7, 1971. He said that he did not discover any evidence of permanent or residual effects of trauma, and he stated that his opinion was that the claimant was not suffering from any neurological disease. He based the opinion on his examination, which, he said, uncovered no evidence of eye-muscle weakness, nystagmic movement of

the eyes or any equilibrium imbalance, which are symptoms of multiple sclerosis. He did say that the claimant "wobbled slightly" when he walked but otherwise he was normal and able to return to work.

After Dr. Ehmke had testified, the arbitrator granted the claimant's motion to reopen his case-in-chief so that he might introduce certain Hines Veterans Hospital records into evidence. The records concerned the claimant's case history and included diagnoses by Drs. Rubino and Papas that the claimant had multiple sclerosis.

The arbitrator found that the claimant had sustained accidental injuries arising out of and in the course of employment and entered an award for total and permanent disability under section 8(f) of the Workmen's Compensation Act and for medical, surgical and hospital expenses under section 8(a). His finding was confirmed by the Industrial Commission, and the decision of the Commission was affirmed by the circuit court.

The respondent first contends that the Commission's finding of total disability because of injuries arising in the course of employment is against the manifest weight of the evidence. He says that the claimant did not establish that (1) he did in fact have multiple sclerosis; (2) even if he did develop multiple sclerosis, he did not establish that it was causally connected with the accident; (3) even if he did have multiple sclerosis, he did not establish that the condition is permanent.

It is of course clear that the determination of disputed questions of fact is primarily a function of the Industrial Commission and its findings will not be disturbed on review unless they are contrary to the manifest weight of the evidence. (*National Castings Division of Midland-Ross Corp. v. Industrial Com.,* 55 Ill.2d 198, 203; *Mechanics Universal Joint Division, Borg-Warner Corp. v. Industrial Com.,* 21 Ill.2d 535, 538.) The resolving of conflicting medical views, including those relating to causation of a physical condition, is peculiarly within the province of the

Industrial Commission. *Ford Motor Co. v. Industrial Com.,* 55 Ill.2d 549, 554; *Floyd v. Industrial Com.,* 47 Ill.2d 193, 196.

The hospital reports of Dr. Rubino and Dr. Papas which were introduced into evidence show they diagnosed the claimant's condition as multiple sclerosis. In his deposition Dr. Rubino also stated that the claimant's condition could most likely be described as multiple sclerosis. He testified that his condition could be permanent and could be causally connected with his head injury. We would note parenthetically that we have recognized that where medical knowledge of a disease is limited, as is so in the case of multiple sclerosis, medical evidence as to causation may not be unqualified and unequivocal. (*National Castings Division of Midland-Ross Corp. v. Industrial Com.,* 55 Ill.2d 198.) It is not disputed that the claimant's health was normal prior to the accident and that after he bumped his head he immediately began to suffer from blurred and double vision, dizziness, nausea, imbalanced equilibrium, excessive fatigue and neck pains. This court stated in *Leason v. Industrial Com.,* 55 Ill.2d 486, 494: " 'Proof of the state of health of the employee prior to and down to the time of the injury, and the change immediately following the injury and continuing thereafter, is competent as tending to establish that the impaired condition is due to the injury'." *Plano Foundry Co. v. Industrial Com.,* 356 Ill. 186, 198-199.

This court has held that under the Workmen's Compensation Act an accident may be a causative factor in the case of multiple sclerosis. In *Mechanics Universal Joint Division, Borg-Warner Corp. v. Industrial Com.,* 21 Ill.2d 535, and in *National Castings Division of Midland-Ross Corp. v. Industrial Com.,* 55 Ill.2d 198, it was held that findings that the industrial accidents involved were causally related to the claimant's multiple sclerosis were not improper. It cannot be said that the finding here on a similar record was contrary to the manifest weight of the

evidence. The circuit court was correct in affirming the Industrial Commission's award.

The contention of the respondent that the finding of the Industrial Commission must be reversed because the hospital records which were admitted into evidence were not certified as true and correct was not preserved for consideration on appeal. At the hearing the claimant moved the arbitrator to reopen his case-in-chief to permit him to introduce his hospital records into evidence. Dixon's response to the motion was simply: "Show my general objection to that."

Objections must be sufficiently specific to make the ground for objection known to the trial court. A general objection will not preserve the question for review on appeal. In *Calumet and Chicago Canal and Dock Co. v. Morawetz,* 195 Ill. 398, 409, this court said: "Parties cannot make a general objection upon the trial below, and then insist upon a specific objection in this court, which was not specified at all in the trial court. [Citations.] In *Chicago and Alton Railroad Co. v. Morgan, supra,* it was held that, where an objection to evidence is made generally, a particular objection to its admission, which might have been obviated by other proof, will not avail on appeal." See also McCormick, Handbook of the Law of Evidence sec. 52, at 117 (1954).

Dixon contends, too, that the circuit court abused its discretion in refusing to remand to the Industrial Commission for an independent medical examination of the claimant.

The Workmen's Compensation Act empowers the Industrial Commission in its discretion to appoint impartial medical examiners. (Ill. Rev. Stat. 1969, ch. 48, par. 138.19(c).) No request was made here of the Commission to have an independent examination, but the respondent did make the request of the circuit court. It will not be necessary for us to examine and discuss the question of the authority of the circuit court to appoint impartial medical

examiners, for, whatever may be its power to remand to the Commission for such examination, there is no showing that the circuit court abused discretion in not doing so. There was medical evidence presented here by both parties. It was in conflict, but that certainly is not atypical so far as workmen's compensation cases are concerned. The respondent did not make any allegation which would call for such examination. We cannot say there was an abuse of discretion by the court.

For the reasons given, the judgment of the circuit court of McDonough County is affirmed.

*Judgment affirmed.*