NEELY DOTSON, Indiv. and as Adm'r of the Estate of Ida Dotson, Deceased, *et al.*, Plaintiffs-Appellees, v. SEARS, ROEBUCK AND COMPANY, Defendant-Appellant.

First District (3rd Division)   No. 86—0799

Opinion filed June 30, 1987.

1038

RIZZI, J., specially concurring.

Arnstein, Gluck, Lehr, Barron & Milligan, of Chicago (Arthur L. Klein, Kurt J. Heinz, and David S. Waxman, of counsel), for appellant.

Lane & Munday, of Chicago (John J. Munday and Stephen I. Lane, of counsel), for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

This cause arose from an explosion and fire which occurred in the Dotson home on February 20, 1980, after a repairman employed by defendant repaired a gas clothes dryer located on the premises. Ida Dotson and Stevie Hall were injured in the accident and died approxi-

mately two weeks later and plaintiff Tony Dotson suffered minor burns. Plaintiffs alleged that defendant was vicariously liable for the negligent repair of the clothes dryer which caused the explosion and fire. Ultimately, defendant admitted liability and the cause went to trial in the circuit court of Cook County on the issue of damages only. The jury awarded plaintiffs $2,310,000 for the injuries to and wrongful deaths of Ida Dotson and Stevie Hall and the injuries to Tony Dotson. Defendant appeals the $1,700,000 wrongful death award to the estate of Ida Dotson, the $400,000 wrongful death award to the estate of Stevie Hall and the $10,000 award to Tony Dotson.

Defendant contends these awards were excessive, are not supported by the competent evidence and resulted from several errors committed by the trial court. Specifically, defendant complains that the trial court: (1) failed either to prevent plaintiffs' prejudicial and inflammatory closing argument or to declare a mistrial as a result thereof; (2) allowed plaintiff Neely Dotson to advance a claim for loss of consortium after it had been withdrawn; (3) refused to admit evidence of plaintiff Neely Dotson's remarriage in order to limit his recovery for loss of consortium; (4) permitted Steve Dotson to recover for the wrongful death of his illegitimate son, Stevie Hall.

Defendant initially complains of plaintiffs' closing argument. It claims that repeated references to its admission of liability violated a motion *in limine*, were intended to and did inflame the jury and "went far beyond the permissable [sic] limit of drawing reasonable inferences and conclusions from the evidence." Defendant further claims that plaintiffs' counsel improperly compared their case to others and decedents' lives to animals and inanimate objects. Defendant contends it timely objected to plaintiffs' closing argument and that, even if it did not, the trial court had a duty to *sua sponte* stop the prejudicial argument. Defendant concludes that the trial court erred in not doing so and in denying its motion for a mistrial at the conclusion of the arguments.

Plaintiffs respond that defendant failed to object in a timely manner and has thus waived the issue on appeal. Alternatively, they contend that their references to defendant's admission of liability did not violate the motion *in limine* which prohibited the introduction into the trial or counsel's arguments of "all evidence of the occurrence *** that gave rise to this action." They further assert that the purpose of the argument was to show the jury that defendant admitted liability and conceded plaintiffs' damages by its failure to present any evidence of its own. Lastly, plaintiffs assert that the determination of whether a closing argument is prejudicial and has denied a party a

fair trial is, in the first instance, for the trial court and will not be reversed absent an abuse of discretion.

◼ We believe that defendant failed to timely and adequately object to the errors allegedly committed in plaintiffs' closing argument and, thus, to preserve this issue for appeal. Defendant offers no authority for the assertion that its "objection" during plaintiffs' closing argument, made in the form of a reserved motion, was adequate to preserve any error committed in plaintiffs' closing argument. The rule in Illinois is that a "failure to object *at the time of the argument* constitutes a waiver of any error." (Emphasis added.) (*Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 438, 481 N.E.2d 1037.) Moreover, an objection must be sufficiently specific to apprise the trial court of the grounds of objection. (*Dixon v. Industrial Com.* (1975), 60 Ill. 2d 126, 132, 324 N.E.2d 393.) Here, defendant's counsel merely informed the court that he wanted to make a motion but he would reserve it until plaintiffs' counsel was finished so that he could complete his argument. Thus, during plaintiffs' argument, the court was not apprised of the basis of the motion and had no reason to believe that defendant's counsel had any objection to plaintiffs' closing argument. As a result, defendant has waived any errors in plaintiffs' closing argument.

Even if defendant's reserved motion constitutes an adequate objection, any errors in plaintiffs' closing argument did not deny defendant a fair trial.

◼ The motion *in limine* sought to bar the parties from introducing into the trial, and from otherwise using, "all evidence" relating to the occurrence which gave rise to the litigation. Defendant contended that it was prejudicial error to admit evidence of the facts of the occurrence giving rise to the suit. (*Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 445 N.E.2d 485, *aff'd* (1984), 102 Ill. 2d 505, 468 N.E.2d 1228.) Plaintiffs' closing argument made no reference to the evidentiary facts "giving rise" to the action. Rather, it argued a nonevidentiary fact, defendant's admission of liability, of which the jury was already well aware. As such, it did not violate the motion *in limine*.

◼ Additionally, plaintiffs' closing argument did not improperly compare their case to others or decedents' lives to animals or inanimate objects. Plaintiffs' counsel told the jury that the tragedy suffered by plaintiffs was of the magnitude of any litigant that ever came into the courtroom asking for damages and that there had never been a litigant who had sustained the kind of loss that the plaintiffs had. In attempting to illustrate the meaning of "substantial" as used in the jury instruction that the law presumes a substantial pecuniary

loss to the spouse and children of a decedent, plaintiffs' counsel told the jury that a million dollars is certainly substantial, but that horses, paintings and computers are bought and sold for that much. These arguments did not exceed the bounds of fair argument.

■ The closing argument at issue in *Richardson v. Nelson* (1906), 221 Ill. 254, 77 N.E. 583, *overruled on other grounds People ex rel. Noren v. Dempsey* (1957), 10 Ill. 2d 288, 139 N.E.2d 780, referred to judgments awarded in other cases. Here, plaintiffs' counsel made no reference to any specific cases or awards. In *Hansel v. Chicago Transit Authority* (1970), 132 Ill. App. 2d 402, 270 N.E.2d 553, defendant's counsel told the jury that in other cases where employees had been negligent he had advised the giving of money damages. The court held that it was error for counsel to tell the jury what he had done in other cases having no relevance to the suit at issue. (132 Ill. App. 2d 402, 406, 270 N.E.2d 553.) Here, plaintiffs' counsel did not tell the jury that he personally knew plaintiffs' loss exceeded that of any other litigant nor could his argument have been so interpreted.

■ We also find the Federal court cases cited by defendant distinguishable. In *Klotz v. Sears, Roebuck & Co.* (7th Cir. 1959), 267 F.2d 53, *cert. denied* (1959), 361 U.S. 877, 4 L. Ed. 2d 114, 80 S. Ct. 141, plaintiff's counsel asked the jurors to do unto others as they would have done unto them and to test defendant's counsel's sincerity by asking what he would have taken for his eye. He also told them that no amount given defendant's counsel would be enough to him and that defendant had purchased plaintiff's eye and it was their job to decide the amount for which he would sell it. The court held that this argument was similar to arguments asking the jurors to put themselves in plaintiff's place and a deliberate appeal to the jury to substitute sympathy for judgment. (267 F.2d 53, 55.) In *Leathers v. General Motors Corp.* (4th Cir. 1976), 546 F.2d 1083, plaintiff's counsel asked the jurors how much the loss of the use of their legs would be worth to them. The court held that, while this "golden rule" argument did not automatically require reversal, it did require it when coupled with the closeness of the case. (546 F.2d 1083, 1086.) Here, plaintiffs' closing argument did not ask the jury to put itself in plaintiffs' position and did not otherwise approach the egregious appeal to sympathy in *Klotz* and *Leathers.* Moreover, since defendant had conceded liability and declined to present evidence of its own, this was not a close case.

■ Finally, because the argument here did not rise to the level of argument which denied defendant a fair trial, the trial court did not have the duty to stop it of its own motion (see *Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249) or to grant a mistrial, which rests in

the sound discretion of the trial court and will not be reversed absent an abuse thereof (*Benuska v. Dahl* (1980), 87 Ill. App. 3d 911, 410 N.E.2d 249). Rather, this case is governed by the rule that in determining whether or not a party has been denied a fair trial due to arguments to a jury, the permissible scope and character of the argument is largely left to the trial court and its determination will not be reversed unless it has clearly abused its discretion. (*Lawing v. Chicago Transit Authority* (1986), 142 Ill. App. 3d 119, 125-26, 491 N.E.2d 145.) Moreover, every reasonable presumption must be indulged that the trial court properly exercised its discretion because it is in a much better position to judge the prejudicial effect, if any, of counsel's conduct. 142 Ill. App. 3d 119, 126, 491 N.E.2d 145.

■ Defendant next contends that plaintiff Neely Dotson withdrew his loss of consortium claim in order to keep from the jury the fact of his remarriage after the death of his first wife, Ida Dotson. Defendant asserts that despite this withdrawal plaintiff Neely Dotson was allowed by the court to introduce evidence of the quality of his marriage to Ida ostensibly to show that Ida's material services to him, which he was still seeking, would have continued in the future but in reality to show a loss of society. Plaintiffs respond that withdrawal of Neely's loss of consortium claim precluded him from recovering for the loss of Ida's society, not for the loss of her material services. Plaintiff asserts that the quality of his marriage to Ida was relevant to the determination of what material services were lost by her death and the length of time they would have continued.

We believe the trial court erred in allowing evidence of the quality of Neely's marriage to Ida. This decision was grounded on the trial court's agreement with plaintiffs that the withdrawal of Neely's claim for loss of consortium precluded only a recovery for the loss of Ida's society. However, even if the quality of the Dotson's marriage was relevant to the claim for loss of Ida's material services, such evidence was precluded by Neely's withdrawal of his loss of consortium claim. Contrary to the understanding of the trial court, a loss of consortium claim includes a claim for loss of material services.

Our analysis of this issue begins with the recognition that claims for the personal services of a spouse have traditionally been recoverable in wrongful death actions. (*McFarlane v. Chicago City Ry. Co.* (1919), 288 Ill. 476, 123 N.E. 638; Illinois Pattern Jury Instructions, Civil, No. 31.04 (2d ed. 1971) (hereinafter IPI Civil 2d).) Moreover, evidence of remarriage after the death of a spouse was irrelevant to the issue of the damages recoverable for his or her wrongful death and therefore inadmissable at trial. (*Watson v. Fischbach* (1973), 54 Ill. 2d

498, 301 N.E.2d 303.) However, until *Elliott v. Willis* (1982), 92 Ill. 2d 530, 442 N.E.2d 163, claims for loss of consortium were not recoverable in such actions. Thereafter, *Carter v. Chicago & Illinois Midland Ry.* (1985), 130 Ill. App. 3d 431, 474 N.E.2d 458, held that *Elliott* had implicitly overruled *Watson* and that evidence of remarriage was relevant to a claim for loss of consortium and admissable at trial because recovery for loss of consortium was limited to actual loss, *i.e.*, "loss up to the time of remarriage." 130 Ill. App. 3d 431, 436, 474 N.E.2d 458.

Although neither *Elliott* nor *Carter* explicitly holds that a claim for loss of a spouse's material services is henceforth incorporated into the now recoverable claim for loss of consortium in a wrongful death action, they must be construed to such effect. While *Elliott* did not mention the material services component of the loss of consortium claim, it affirmed an appellate court decision which held that the trial court should have given the jury an instruction on loss of consortium, "*i.e.*, lost *services*, society, companionship and sex." (Emphasis added.) (*Elliott v. Willis* (1980), 89 Ill. App. 3d 1144, 1145, 412 N.E.2d 638.) Moreover, the supreme court noted that consortium "includes society, guidance, companionship, felicity and sexual relations." (*Elliott v. Willis* (1982), 92 Ill. 2d 530, 535, citing *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881.) That case, in turn, observed that consortium includes "in addition to *material services*, *** companionship, felicity and sexual intercourse, all welded into a conceptualistic unity" and that consortium was incapable of separation into the "material and sentimental services." (Emphasis added.) 20 Ill. 2d 406, 427-28, 170 N.E.2d 881.

From these cases, we conclude that material services have always been a component of a claim for loss of consortium and that the allowance of their recovery in wrongful death actions prior to *Elliott* was a necessary departure from this general rule. We further conclude that *Elliott* mandates a finding that material services are now recoverable in wrongful death actions only as part of a loss of consortium claim. As such, the trial court erred when it allowed evidence of the quality of the Dotson's marriage as evidence that Ida's services to Neely would have continued in the future. Because Neely withdrew his claim for loss of consortium, which under *Elliott* included his claim for loss of material services, this evidence was irrelevant to the issue of the amount of damages to which Neely was entitled. This error requires a reversal of the $1,700,000 award to the estate of Ida Dotson and a new trial.

■ Defendant next argues that to the extent the trial court al-

lowed Neely to prosecute a claim for loss of material services, it erred in excluding evidence of his remarriage, which occurred some six months after the death of Ida Dotson. Plaintiffs respond that: (1) this evidence was properly excluded since Neely had withdrawn his loss of consortium claim which did not include material services; (2) *Carter* held such evidence relevant only to a consortium claim not including material services; and (3) defendant's counsel knew that plaintiff was not withdrawing the claim for loss of material services.

Having concluded that Neely could not separate a claim for loss of material services from a claim for loss of consortium, we also conclude that to the extent the trial court allowed Neely to advance a claim for such services it should have allowed evidence of his remarriage. Such evidence was properly admissable to limit his recovery for lost material services to "actual loss." (*Carter v. Chicago & Illinois Midland Ry.* (1985), 130 Ill. App. 3d 431, 436, 474 N.E.2d 458.) In reaching this conclusion, we disagree with plaintiff that the claim for loss of consortium recognized in *Elliott* and as to which remarriage was held relevant in *Carter* does not include material services. This error compounded the error of the trial court in allowing plaintiff to advance a claim for lost material services after he represented that he was withdrawing the claim in which such services were properly includable and also requires vacation of the award to Ida's estate and a new trial.

■ The trial court committed a third error in its handling of the fact of Neely's remarriage which requires a reversal. *Watson v. Fischbach* (1973), 54 Ill. 2d 498, 301 N.E.2d 303, in addition to holding that remarriage was irrelevant to the damages recoverable for the wrongful death of a spouse, also considered the relevancy of remarriage to the selection of an impartial jury. It held that the prospective jurors must be told of the fact of remarriage and asked whether they were acquainted with the new spouse. (54 Ill. 2d 498, 503, 301 N.E.2d 303.) The supreme court explicitly rejected an approach adopted by some jurisdictions which merely introduce a new spouse by her married and maiden names without informing the jury of the fact of remarriage. (54 Ill. 2d 498, 502-03, 301 N.E.2d 303.) This approach was the one taken by the trial court and violated the rule established in *Watson* and unaffected by the partial overruling of that case by *Elliott*. The trial court's failure to adequately apprise the jury of the fact of Neely Dotson's remarriage and the identity of his new spouse thus necessitates a new trial.

■ ■ Defendant next contends that the trial court allowed Steve Dotson to recover for the death of Stevie Hall despite the fact

that the father of an illegitimate child is not entitled to recover under the Illinois Wrongful Death Act because he is not a "next of kin" of such a child as that term is used therein. (Ill. Rev. Stat. 1979, ch. 70, par. 2.) Defendant relies on the definition given "next of kin" in *Wilcox v. Bierd* (1928), 330 Ill. 571, 162 N.E. 170, *overruled on other grounds McDaniel v. Bullard* (1966), 34 Ill. 2d 487, 216 N.E.2d 140. *Wilcox* held that as used in the Wrongful Death Act, "next of kin" meant "those persons who take the personal estate of the deceased under the statutes of distribution." (*Wilcox v. Bierd* (1928), 330 Ill. 571, 581, 162 N.E.2d 170.) Defendant argues that, because only the mother or her relations may inherit from an illegitimate child under section 2—2 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 2—2), a father of such child is not entitled to recover under the Wrongful Death Act as a next of kin. Defendant concludes that the trial court erred when it held the Wrongful Death Act unconstitutional as violative of equal protection of the laws because a statutory bar against recovery by the father of an illegitimate child is valid where, as in Illinois, a father of such child may, by a voluntary unilateral act, legitimate him or her. (*Parham v. Hughes* (1979), 441 U.S. 347, 60 L. Ed. 2d 269, 99 S. Ct. 1742.) Defendant asserts that, contrary to the trial court's determination, Steve Dotson could have unilaterally legitimated Stevie either in Illinois, where he resided, or in Wisconsin, where Stevie resided with his mother, and that his failure to do so precludes him from recovering for the child's wrongful death.

Plaintiffs respond that *Wilcox* is no longer viable because a change in the language of the Wrongful Death Act has also changed the meaning of "next of kin" as used therein. *Wilcox* was decided when the Act provided that the recovery in a wrongful death action "shall be distributed to [the] widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate." (*Wilcox v. Bierd* (1928), 330 Ill. 571, 579, 162 N.E. 170.) The Act was amended in 1955, not 1979 as thought by plaintiffs, to provide that the recovery is to be distributed according to the percentage of dependency of the surviving spouse and next of kin on the decedent. (Ill. Rev. Stat. 1955, ch. 70, par. 2.) Plaintiffs assert that this change reflects a legislative intent that a wrongful death recovery should go to a decedent's dependents and blood relatives without regard to their rights under the Probate Act. Plaintiffs conclude that the technical, legal meaning of "next of kin" recognized in *Wilcox* as "persons nearest in degree of blood surviving" (*Wilcox v. Bierd* (1928), 330 Ill. 571, 581, 162 N.E.2d 170) applies under the present version of the statute to include the father of

an illegitimate child. Plaintiffs urge that we must adopt this construction of the statute to avoid one which would render the statute unconstitutional.

Alternatively, plaintiffs distinguish *Parham*. Plaintiffs contend that in Illinois there are no statutes expressly prohibiting fathers of illegitimate children from recovering for their wrongful deaths and there are no means by which such fathers may unilaterally legitimize their children, in contrast to the situation in Georgia, whose statutory scheme was at issue in *Parham*. Plaintiffs assert that while both Wisconsin and Illinois provide means by which a father may establish his paternity of a child, such actions would not legitimate the child or enhance the father's position under the Wrongful Death Act.

We must construe the statute as constitutional if that can reasonably be done and resolve any doubts in construction in favor of validity. (*People v. Sturlic* (1985), 130 Ill. App. 3d 120, 474 N.E.2d 1.) However, we do not believe we can reasonably construe the Wrongful Death Act as allowing fathers of illegitimate children a right of recovery thereunder. Because there was no common law right of action for wrongful death, the statute is the source of determining who may sue and under what conditions; the statute must be strictly construed. (*In re Estate of Edwards* (1982), 106 Ill. App. 3d 635, 638, 435 N.E.2d 1379, citing *Wilson v. Tromly* (1949), 404 Ill. 307, 89 N.E.2d 22.) Recovery is limited solely to those beneficiaries clearly described in the statute. (*In re Estate of Edwards* (1982), 106 Ill. App. 3d 635, 638, 435 N.E.2d 1379.) It is well established that the statute limits recovery to a surviving spouse and any "next of kin" as determined under the Probate Act, *i.e.*, those persons who take the personal estate of an intestate decedent. *Wilcox v. Bierd* (1928), 330 Ill. 571, 162 N.E. 170; *Gustafson v. Consumer Sales Agency* (1953), 414 Ill. 235, 110 N.E.2d 865; *Means v. City of Chicago* (N.D. Ill. 1982), 535 F. Supp. 455.

■■■ Plaintiffs offer no authority for their contention that by amending the method of distribution of the recovery under the statute the legislature also intended to amend the class of persons to whom the recovery was to be distributed. That such was not the legislative intent may be inferred from the fact that the statute was not so explicitly amended at that time and has not been so amended since. It may also be inferred from the fact that in 1953 the statute was amended to provide that "next of kin includes an adopting parent and an adopted child, and they shall be treated as a natural parent and a natural child." (1953 Ill. Laws 368.) This amendment was enacted after *McDavid v. Fiscar* (1951), 342 Ill. App. 673, 97 N.E.2d 587, de-

cided that "next of kin" as used in the statute included an adopted son and, thus, codified that holding. Since the legislature has explicitly amended the statute to provide that adoptive parents and children are next of kin, we may assume that it would have amended the statute to provide that fathers of illegitimate children are also their next of kin if it so intended. In construing the statute, we cannot inject such a provision into it, however desirable or beneficial it may be. (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73, *cert. denied* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612, *overruled on other grounds Paepcke v. Public Building Com.* (1970), 46 Ill. 2d 330, 263 N.E.2d 11.) Because fathers of illegitimate children are not clearly described as beneficiaries under the statute, we are constrained to find that they are not entitled to recover under the Act for the wrongful deaths of their children. *In re Estate of Edwards* (1982), 106 Ill. App. 3d 635, 638, 435 N.E.2d 1379.

This is only half the inquiry, however. We must also determine whether this statutory prohibition is valid. *Parham v. Hughes* (1979), 441 U.S. 347, 60 L. Ed. 2d 269, 99 S. Ct. 1742, upheld a Georgia statute which prohibited only the fathers of illegitimate children from recovering for their wrongful deaths if they had not legitimated them. A second statute allowed them to do so unilaterally in a simple judicial proceeding. The Supreme Court relied on the unilateral nature of this proceeding to find that mothers and fathers of illegitimate children were not similarly situated and, thus, that the statute did not invidiously discriminate against the fathers on the basis of sex. (441 U.S. 347, 355, 60 L. Ed. 2d 269, 277, 99 S. Ct. 1742, 1747-48.) The court reasoned that Georgia did not discriminate against fathers as a class since fathers who legitimated their children had the same right to sue for their wrongful deaths as did fathers whose children were born legitimate but merely distinguished between those who had and those who had not legitimated their children. (441 U.S. 347, 356, 60 L. Ed. 2d 269, 277-78, 99 S. Ct. 1742, 1748.) The court upheld the statutory bar as rationally related to permissible State objectives. 441 U.S. 347, 357-58, 60 L. Ed. 2d 269, 278-79, 99 S. Ct. 1742, 1748-49.

In Illinois there are no means comparable to the statutory means provided in Georgia for a father to legitimize his illegitimate children. Defendant misconstrues a putative father's establishment of paternity through declaratory judgment or *habeas corpus* proceedings as the legitimization of his children. (See, *e.g, Pritz v. Chesnul* (1982), 106 Ill. App. 3d 969, 436 N.E.2d 631.) However, such proceedings are brought merely to establish parental rights and obligations, including the obligation of support and the right of visitation. (106 Ill. App. 3d

969, 970, 436 N.E.2d 631.) Such proceedings have been allowed as alternatives to proceedings under the Paternity Act which could only have been brought by the mothers of illegitimate children or the Illinois Department of Public Aid. (106 Ill. App. 3d 969, 973, 436 N.E.2d 631; Ill. Rev. Stat. 1979, ch. 40, par. 1354.) *Pritz* recognized that the purpose of a statutory paternity proceeding was to convert a father's moral obligation to support his illegitimate children into a legal one and that "this purpose would be more effectively promoted by allowing both unwed mothers and *** fathers to maintain actions to establish paternity." (*Pritz v. Chesnul* (1982), 106 Ill. App. 3d 969, 974, 436 N.E.2d 631.) That proceedings to establish paternity do not involve legitimization of the children involved is also evidenced by the fact that in two of the cases cited by defendant, *In re Ozment* (1978), 61 Ill. App. 3d 1044, 378 N.E.2d 409, and *Happel v. Mecklenburger* (1981), 101 Ill. App. 3d 107, 427 N.E.2d 974, the plaintiff putative father had to rebut the presumption of legitimacy of a child born in lawful wedlock to establish his own paternity of the child.

■■■ Moreover, the fact that, under section 2—2 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 2—2(h)), an illegitimate child is the heir of his father if the decedent had acknowledged paternity or was adjudged to be the father during his lifetime or thereafter by a court of competent jurisdiction does not compel a contrary conclusion. This provision amended the former allowance of inheritance by illegitimate children only from their mothers in section 12 of the Probate Act (Ill. Rev. Stat. 1973, ch. 3, par. 12), which the Supreme Court held violative of equal protection in *Trimble v. Gordon* (1977), 430 U.S. 762, 52 L. Ed. 2d 31, 97 S. Ct. 1459, and was intended only to cure that constitutional infirmity. (80th Ill. Gen. Assem., House Proceedings, May 10, 1978, at 76-79 (House Bill 2447).) That the adjudication of the paternity of an illegitimate child does not accomplish the legitimization of the child is further evidenced by the provision in section 2—2 that "[a] person who was illegitimate whose parents intermarry and who is acknowledged by the father as [his] child is legitimate." (Ill. Rev. Stat. 1979, ch. 110½, par. 2—2(h).) If adjudication of paternity accomplished legitimization, the quoted provision would be surplusage. However, in construing a statute, it must be read as a whole (*People v. Jordan* (1984), 103 Ill. 2d 192, 206, 469 N.E.2d 569) and, if possible, so that no word, clause or sentence is rendered superfluous or meaningless (*Ekco, Inc. v. Edgar* (1985), 135 Ill. App. 3d 557, 482 N.E.2d 130). Thus, it is evident that an adjudication of the paternity of an illegitimate child during the father's lifetime or thereafter does not accomplish the legitimization of the

child but merely allows the illegitimate child to inherit from the father.

The only statutory means provided in Illinois for the legitimization of a child are not unilateral. Section 303 of the Illinois Marriage and Dissolution of Marriage Act provides, *inter alia*, that children whose parents marry after their birth are deemed legitimate. (Ill. Rev. Stat. 1979, ch. 40, par. 303.) Section 2—2 of the Probate Act of 1975 provides, *inter alia*, that a person who was illegitimate whose parents intermarry and who is acknowledged by the father as his child is legitimate. (Ill. Rev. Stat. 1979, ch. 110½, par. 2—2(h).) Additionally, section 212 of the former Act provides that children born of an invalid or common law marriage are legitimate. (Ill. Rev. Stat. 1979, ch. 40, par. 212(c).) Plaintiffs do not contend that Steve Dotson and Vickie Hall were legally married or were parties to a common law or otherwise invalid marriage. Therefore, Stevie Hall was illegitimate when born and could have been legitimated only through the intermarriage of his parents or, for purposes of inheritance by or from him, through their intermarriage and Steve Dotson's acknowledgement of him as his child.

Our conclusions with respect to Illinois law apply equally to Wisconsin law. That is, the means provided by that State for the establishment of a child's paternity do not provide for the legitimization of the child. (See *Slawek v. Stroh* (1974), 62 Wis. 2d 295, 215 N.W.2d 9; Wis. Stat. Ann., sec. 767.45 (West 1981).) Wisconsin, like Illinois, requires the intermarriage of the parents to legitimate a child. (See Wis. Stat. Ann., sec. 767.60 (West 1981).) While not raised by defendant, we believe it is irrelevant that in Wisconsin the father of an illegitimate child may sue for his wrongful death if he has been adjudicated to be the father in a statutory paternity proceeding. See Wis. Stat. Ann., secs. 895.04 (West 1983), 852.01 (West 1971), 852.05 (West 1986 Pocket Part), 767.45 (West 1981).

As to Illinois law, the means by which a child may be legitimated are under the control of both parents. Steve Dotson could not have unilaterally required Vickie Hall to marry him. Without their marriage, any acknowledgement by him of Stevie as his child was completely ineffective to render him legitimate and to give Steve Dotson the right to sue for his wrongful death. Thus, the situation in Illinois with respect to a father's right to sue for his illegitimate child's death is fundamentally different from that at issue in *Parham*. In Illinois, mothers and fathers of illegitimate children are similarly situated. Neither has the unilateral power to legitimate the child. That power is mutual and subject to the consent of the other parent. As

such, to allow the mothers of illegitimate children to recover for their wrongful deaths while denying that right to their fathers constitutes invidious gender-based discrimination which denies the equal protection of the laws. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 18. Accord *Wilcox v. Jones* (Fla. App. 1977), 346 So. 2d 1037, *cert. denied* (Fla. 1978), 357 So. 2d 188; *Moore v. Thunderbird, Inc.* (La. App. 1976), 331 So. 2d 555; *Cobb v. State Security Insurance Co.* (Mo. 1979), 576 S.W.2d 726.

The situation of a father of an illegitimate child in Illinois is more like that of the mother in *Glona v. American Guarantee & Liability Insurance Co.* (1968), 391 U.S. 73, 20 L. Ed. 2d 441, 88 S. Ct. 1515. Therein, the mother of an illegitimate child was prohibited from suing for his wrongful death by a Louisiana statute as construed by the State's courts. The Supreme Court stated:

"To say that the test of equal protection should be the 'legal' rather than the biological relationship is to avoid the issue. For the Equal Protection Clause necessarily limits the authority of a State to draw such 'legal' lines as it chooses. *** Where the claimant is *plainly* the mother, the State denies equal protection of the laws to withhold relief *merely* because the child was born out of wedlock." (Emphasis added.) 391 U.S. 73, 75-76, 20 L. Ed. 2d 441, 443-44, 88 S. Ct. 1515, 1516-17.

We believe that *Glona* controls the case at bar. We thus affirm the trial court's ruling on this issue and the award to Steve Dotson for the wrongful death of his illegitimate son, Stevie Hall.

■■■ Defendant next contends that the total awards to plaintiffs confirm that the improper closing argument, the "back door" assertion of the loss of consortium claim and the trial court's refusal to allow evidence of Neely's remarriage inflamed the jury against it. Defendant concludes that the awards are not supported by the competent evidence and can only be explained by an appeal to the jury's passion and prejudice.

To the extent the award to the estate of Ida Dotson was influenced by the assertion of the material services component of the loss of consortium claim withdrawn by plaintiff Neely Dotson, by the evidence relating to the quality of the Dotson's marriage, and by the trial court's error in excluding evidence of Neely's remarriage we agree with defendant that the verdicts are excessive and not supported by the competent evidence.

■■■ We do not agree, however, that the awards are otherwise assailable. Specifically, the jury was not precluded from awarding plaintiffs damages on the basis of a future pecuniary loss resulting from

the death of Ida Dotson either because she was not a wage earner or because they failed to request an instruction on the issue. If a wrongful death action is brought for a surviving spouse or lineal next of kin, the law presumes substantial pecuniary damages arising from the relationship alone and it is immaterial whether they received pecuniary assistance from the deceased in the past. (*Prendergast v. Cox* (1984), 128 Ill. App. 3d 84, 88-89, 470 N.E.2d 34.) As defendant chose not to present any evidence of its own, this presumption was never rebutted and justified an award of substantial damages even without proof of actual loss. (*Magnone v. Chicago & Northwestern Transportation Co.* (1984), 126 Ill. App. 3d 170, 466 N.E.2d 1261.) Moreover, the trial court instructed the jury that in determining the pecuniary loss to plaintiffs, and the weight to be given the presumption of such loss, it could consider what benefits of pecuniary value the decedent might have expected to contribute to her children and widower had she lived, including what she was likely to have earned in the future and the instruction, moral training and superintendence of education she might have been expected to give them. The court also instructed the jury that in determining the pecuniary loss to the children it could consider Ida Dotson's companionship, guidance, advice, love and affection as they were likely to occur in the future. These instructions, from IPI Civil 2d No. 31.01 *et seq.*, were sufficient to support an award of substantial future damages notwithstanding plaintiffs' failure to request an instruction on such damages from IPI Civil 2d No. 34.01 *et seq.* That most of the Dotson children were adults does not alter this conclusion. The presumption of substantial pecuniary loss to next of kin applies even where they and the decedent are adults. *Naslund v. Watts* (1967), 80 Ill. App. 2d 464, 472, 224 N.E.2d 474.

▮▮ Although plaintiffs could have relied entirely on this presumption to prove their damages, they also presented substantial evidence of the pecuniary loss to them resulting from the deaths of Ida Dotson and Stevie Hall. We do not agree with defendant that, merely because the Dotson children were adults at the time of their mother's death, the $1.7 million award to her estate was unreasonable compensation. While Neely Dotson was precluded from recovering for the loss of Ida's society, having withdrawn that claim, the same is not true of the plaintiff adult children. (*In re Estate of Keeling* (1985), 133 Ill. App. 3d 226, 478 N.E.2d 871.) Thus, the award to the estate of Ida Dotson was also justified by the evidence as to the quality of the relationships between her and her children.

▮▮ Defendant also complains that the jury was improperly allowed to consider Neely Dotson's testimony as to his grief at seeing

Ida in the hospital in determining the damages to award because it was stricken on an incorrect basis. While the trial court struck this testimony because it was conclusory, defendant contends that it was irrelevant. Defendant asserts that the jury might have thought the evidence proper but for its conclusory nature and might have used it in reaching a verdict. Any error of the trial court in striking this testimony was harmless in view of its instruction to the jury at the close of all the evidence that in determining the award to plaintiff Neely Dotson it could not consider, *inter alia*, his or the children's "grief or sorrow." A jury is presumed to have followed proper instructions and defendant presents no compelling evidence to the contrary. *Carlson v. Dorsey Trailers, Inc.* (1977), 50 Ill. App. 3d 748, 756, 365 N.E.2d 1065.

▄▄ We decline defendant's invitation to compare the awards to the estates of Ida Dotson and Stevie Hall to those in similar cases from other jurisdictions. We also decline to substitute our judgment as to a reasonable award for the injuries to Tony Dotson for that of the jury merely because he was awarded $10,000 instead of the $3,000 to $4,000 requested by his attorney. We heed the advice that the propriety of such awards is not subject to mathematical computation and cannot be measured by comparison with verdicts in other cases. (*Northern Trust Co. v. County of Cook* (1985), 135 Ill. App. 3d 329, 335, 481 N.E.2d 957.) And we do not believe that the awards appealed from are so large that they indicate passion or prejudice on the part of the jury (*Jones v. Karraker* (1983), 98 Ill. 2d 487, 492, 457 N.E.2d 23), fall outside the limits of fair and reasonable compensation, or shock the judicial conscience (*LeMaster v. Chicago Rock Island & Pacific R.R.* (1976), 35 Ill. App. 3d 1001, 1030, 343 N.E.2d 65). What the court observed in *Naslund* applies equally here:

> "The amount of damages to be awarded in a wrongful death action *** rests largely within the discretion of the jury. Jury awards, in such cases, should not be set aside *** unless they are evidently the result of passion or prejudice, or bear no relation to recovery for pecuniary injuries. In the instant case the plaintiff did not rely on the presumption of pecuniary loss *** but offered evidence of the character of the decedent, her mental and physical capacity, her prospects for life, her habits of industry, *** her usual earnings, and the nature of the benefits bestowed by the decedent on her descendants at the time of her death. Although other reasonable persons *** might have fixed the award in this case at a lesser amount than that fixed by this jury, we do not believe that the record *** discloses

that the award \*\*\* was the result of the jury's passion or prejudice, or that it bears no reasonable relation to the pecuniary injuries suffered by the lineal descendants. Consequently, the judgment is affirmed." *Naslund v. Watts* (1967), 80 Ill. App. 2d 464, 474, 224 N.E.2d 474.

In summary, we vacate the $1.7 million award to the estate of Ida Dotson due only to the trial court's errors in handling plaintiff Neely Dotson's withdrawn loss of consortium claim and the fact of his remarriage. These errors necessitate a new trial as to the pecuniary loss to plaintiff Dotson resulting from the death of Ida Dotson. We affirm the $400,000 award to the estate of Stevie Hall and the trial court's allowance of a recovery by his father, Steve Dotson. We affirm the $10,000 personal injury award to plaintiff Tony Dotson.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

WHITE, J., concurs.

JUSTICE RIZZI, specially concurring:
I agree with the result reached by the majority. However, I continue to believe that what I stated in my specially concurring opinion in *Cooper v. Chicago Transit Authority* (1987), 153 Ill. App. 3d 511, relating to presumptions and IPI Civil 2d No. 31.01 is correct.